**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Maura D. Corrigan

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 22, 2004**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                       No. 122696

DEON LAMONT CLAYPOOL,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

TAYLOR, J.

    The issue in this case is whether it is permissible for Michigan trial judges, sentencing under the legislative sentencing guidelines pursuant to MCL 769.34, to consider, for the purpose of a downward departure from the guidelines range, police conduct that is described as sentencing manipulation, sentencing entrapment, or sentencing escalation. These doctrines are based on police misconduct, which, alone, is not an appropriate factor to consider at sentencing. Rather, we hold that, pursuant to *People v Babcock*, 469 Mich 247; 666 NW2d 231 (2003), if it can be objectively and verifiably shown that police conduct

or some other precipitating cause altered a defendant's intent, that altered intent can be considered by the sentencing judge as a ground for a downward sentence departure. Because information of this sort was noted by the sentencing judge in this case, but it is not clear that it was used properly, we vacate the decision of the Court of Appeals in part and remand this case to the trial court for resentencing or rearticulation on the record of the court's reasons for the departure.

## I. FACTS AND PROCEDURAL BACKGROUND

This case arose from a series of sales of crack cocaine by defendant to an undercover police officer. An acquaintance of defendant's in the drug trade introduced him to an undercover officer as a potential customer. On March 8, 2001, the officer bought 28.35 grams of crack cocaine for $1,100. On March 12, 2001, he bought 49.2 grams for $2,000. Finally, on March 14, 2001, he bought 127.575 grams for $4,000. Defendant was arrested and charged with delivery of 50 or more, but less than 225, grams of cocaine, reflecting the third sale.

Defendant pleaded guilty to this charge.[1] The offense carries a statutorily mandated minimum sentence of ten years of imprisonment.[2] However, according to the legislative sentencing guidelines and the former MCL 333.7401(4),[3] the statutorily mandated minimum ten-year sentence for this offense can be reduced or "departed from," as it is described, if certain conditions set forth in MCL 769.34(3)[4] are met.

---

[1] Defendant also pleaded guilty to charges concerning the first and second buys in the series and various other offenses that he committed during the time surrounding the series of buys. However, the present appeal involves only defendant's sentence for the third offense described above, delivery of 50 or more, but less than 225, grams of cocaine.

[2] Former MCL 333.7401(2)(a)(iii), in effect at the time of this action. See 1996 PA 249.

[3] See MCL 769.34(2)(a). When the trial court imposes a mandatory minimum sentence that exceeds the statutory sentencing guidelines range, it is not departing from the statutory sentencing guidelines. Thus, in this case, although the sentence imposed exceeds the recommended sentence range, the trial court does not have to articulate "substantial and compelling" reasons to justify its upward departure *from the guidelines*. However, because the trial court departed downward from the mandatory minimum, it must articulate such reasons to justify *this* downward departure from the mandatory minimum. See former MCL 333.7401(4).

[4] These conditions are:

A court may depart from the appropriate sentence range established under the sentencing guidelines [MCL 777.1 *et seq.*] if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure. All of the following apply to a departure:

At the sentencing hearing, the defense requested a downward departure from the statutorily mandated ten-year minimum sentence on the bases that defendant has a limited criminal history (only one criminal conviction for misdemeanor retail fraud) for his age of twenty-six[5] and that he has an addiction to cocaine, which was costly and jeopardized his ability to pay for his home. In this case, defense counsel also argued that the police had manipulated defendant by making repeated purchases for increasing quantities of cocaine and that, by doing so, they "escalated" the sentence to which defendant would be subjected. In particular, defense counsel argued that the undercover police officer did not arrest defendant after either of the initial buys, but went back to him repeatedly

(a) The court shall not use an individual's gender, race, ethnicity, alienage, national origin, legal occupation, lack of employment, representation by appointed legal counsel, representation by retained legal counsel, appearance in propria persona, or religion to depart from the appropriate sentence range.

(b) The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight. [MCL 769.34(3).]

[5] There was a dispute concerning whether defendant's age was twenty-six or twenty-nine at the time of the offenses, but resolution of this issue is not necessary to our analysis.

4

to purchase cocaine. The defense argued that the officer even paid defendant at least $500 more than the going rate to persuade him to sell a larger quantity of crack cocaine than he otherwise would have sold.

The prosecutor countered that the officer had legitimate law enforcement reasons for the repeated purchases. Those reasons were that many usual sellers of large amounts only will sell small amounts to new buyers, and, thus, it is only by working up to larger amounts that law enforcement can in fact determine what type of seller the suspect is. The prosecutor, however, did not address the defense's distinct claim that no matter what the police motivation may have been, the fact that the police paid defendant $500 over the market price was the sole reason defendant's intent to sell changed from selling a lesser amount to selling a greater amount.

At the conclusion of these arguments, the trial court found substantial and compelling reasons to depart from the mandatory minimum sentence on the basis of defendant's age, minimal criminal history, and stable employment history of approximately two years, and, finally, on the basis of the fact that, in the court's view, defendant had been "escalated" and precluded from getting substance abuse treatment earlier. The trial court did not indicate if the compelling nature of this escalation factor was the view that the police conduct itself was somehow offensive or

that the police had overcome the will of a small dealer by the lure of more money and created a greater criminal out of someone who otherwise would have remained a lesser criminal. The court then departed downward two years from the statutorily mandated minimum sentence of ten years and sentenced defendant to eight to twenty years of imprisonment.

The prosecutor appealed and the Court of Appeals affirmed, holding that all but one of the stated reasons of the trial court, defendant's employment, were substantial and compelling reasons for a downward departure.[6] In a brief analysis, the Court agreed with the trial court's decision to depart downward on the basis of "escalation," citing *People v Shinholster*, 196 Mich App 531; 493 NW2d 502 (1992). Citing the short treatment of this issue in *Shinholster, supra* at 535, the Court stated that "while not constituting entrapment, purposeful[] escala[tion] [of] the defendant's crime" is a permissible reason for a downward departure from a mandatory minimum sentence. Slip op at 2. The Court of Appeals also noted that in *People v Fields*, 448 Mich 58; 528 NW2d 176 (1995), "three of the four

---

[6] Unpublished opinion per curiam, issued October 18, 2002 (Docket No. 238984).

justices in the majority agreed that [escalation] was a permissible factor to consider . . . ." Slip op at 2 n 3.[7]

This Court granted the prosecutor leave to appeal. We framed the issues on appeal as

whether "sentencing manipulation" or "escalation" is a substantial and compelling reason justifying a downward departure from a statutorily imposed mandatory minimum sentence, and whether a trial court may consider the legislative sentencing guidelines recommendation when determining the degree of a departure, which has already been determined to be supported by substantial and compelling reasons. [468 Mich 944 (2003).][8]

_____

[7] Specifically, the *Fields* Court stated in reference to *Shinholster*:

> [T]he Court found that the government's actions, although not rising to the level of entrapment, purposefully escalated the crime. This last factor is of particular importance in our approval of the resolution reached in Shinholster. As a mitigating circumstance surrounding the offense, it weighs heavily in favor of a deviation [departure] from the statutory minimum. [Fields, supra at 79.]

However, the present Court of Appeals panel properly pointed out that this was merely a plurality decision without binding effect because the fourth justice signing the lead opinion, Justice Boyle, authored a concurring opinion in which she refused to approve of the lead opinion's discussion of *Shinholster*. *Fields*, *supra* at 81-82.

[8] Both parties agree that, with respect to the latter issue presented on appeal, the trial court did not impermissibly consider the legislative guidelines in the manner described here. Thus, neither party requests relief

## II. STANDARD OF REVIEW

To decide whether sentencing manipulation, sentencing entrapment, or sentencing escalation could ever be a substantial and compelling reason for a departure as a matter of law, we must interpret the former MCL 333.7401(4) and the general legislative sentencing guidelines provision in MCL 769.34(3). Statutory interpretation is subject to review de novo. *People v Phillips*, 469 Mich 390, 394; 666 NW2d 657 (2003). A trial court's decision that a particular factor is sufficiently substantial and compelling for a departure is reviewed for an abuse of discretion. *Babcock*, *supra* at 269-270.

## III. ANALYSIS

In Michigan, the Legislature has established sentencing guidelines. See MCL 769.31 *et seq*. The underlying approach of the guidelines is that the person to be sentenced is first placed in a narrow sentencing compartment based on rigid factors surrounding the offense and offender variable statuses. Then the individual is eligible to be removed from such "default" compartments on the basis of individualized factors. See *Babcock*, *supra* at 263-264. In cases involving controlled substances,

---

on this issue, and the issue is moot. See *Crawford v Dep't of Civil Service*, 466 Mich 250, 261; 645 NW2d 6 (2002) ("'An issue is moot where circumstances render it impossible for the reviewing court to grant any relief.'" [Citation omitted.]).

however, the Legislature has also established statutorily mandated minimum sentences. See the former MCL 333.7401. Under both provisions, MCL 769.34(3) and the former MCL 333.7401(4), departure from a guidelines range or mandatory sentence is permissible. See MCL 769.34(2)(a). All these provisions allow a downward departure if the court has a "substantial and compelling reason" for the departure. This Court has determined that this statutory language means that there must be an "'objective and verifiable' reason that 'keenly or irresistibly grabs our attention'; is of 'considerable worth' in determining [the appropriate sentence]; and 'exists only in exceptional cases.'"[9] *Babcock*, *supra* at 257-258, quoting *Fields*, *supra* at 62, 67-68.

---

[9] Although some individualized factors may not, in the final analysis, constitute a sufficiently "substantial and compelling" basis for moving a person outside the original compartment, that should not preclude the trial court from considering whatever individualized factors that it sees as relevant. While it is possible, as the Chief Justice argues, that some factors can never be "substantial and compelling" because they can never be objective and verifiable, we are reluctant to characterize too many factors in this way because there are simply too many combinations of factual circumstances for us to feel confident in forever precluding consideration of some particular factor. As a practical matter, it also seems that the upshot of the Chief Justice's viewpoint is that everything will have to be litigated twice through the appellate process—first, to address whether a factor is one that can ever be "substantial and compelling," and, second, to consider whether it is "substantial and compelling" in the circumstances of a specific case. One of the virtues of the majority position is that it would sharply reduce the first of these classes of litigation.

It is clear from the legislative sentencing guidelines that, as discussed in *Babcock*, *supra* at 263-264, the focus of the guidelines is that the court is to consider *this* criminal and *this* offense. As *Babcock* said after discussing the roots of our nation's attachment to the concept of proportionality in criminal sentencing: "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *Id*. at 263.

Because of this approach, police misconduct, on which the doctrines of sentencing manipulation, sentencing entrapment, and sentencing escalation are based,[10] is not an

---

[10] The federal definition of sentencing manipulation can be found in *United States v Shephard*, 4 F3d 647, 649 (CA 8, 1993). The United States Court of Appeals for the Eighth Circuit held that sentencing manipulation occurs when "the government stretche[s] out the investigation merely to increase the sentence [a defendant] would receive." Although Michigan has not defined sentencing manipulation by case law, a majority of state courts addressing the issue has adopted similar language as the functioning definition of the term. See, e.g., *People v Smith*, 31 Cal 4th 1207, 1211-1212; 7 Cal Rptr 3d 559; 80 P3d 662 (2003).

Sentencing *entrapment* has been discussed by our Court of Appeals in *People v Ealy*, 222 Mich App 508, 510-511; 564 NW2d 168 (1997). There, the Court of Appeals referred to the definition from the United States Court of Appeals for the Ninth Circuit: "[S]entencing entrapment occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *United States v Staufer*, 38 F3d 1103, 1106 (CA 9, 1994) (citations and quotation marks omitted.

appropriate factor to consider at sentencing. Police misconduct, standing alone, tells us nothing about the defendant. However, if the defendant has an enhanced intent that was the product of police conduct or any other precipitating factor, and the enhanced intent can be shown in a manner that satisfies the requirements for a sentencing departure as outlined in *Babcock*, it is permissible for a court to consider that enhanced intent in making a departure.[11]

---

In the cases discussing sentencing manipulation and sentencing entrapment, reference is occasionally made to sentencing "escalation." No Michigan case has defined this term, nor has any other court of which we are aware. However, we believe that contextually, sentencing escalation can mean either sentencing manipulation or sentencing entrapment, as defined above.

The Chief Justice states that the substantive defense of entrapment is akin to the sentencing entrapment doctrine. This is not the case. The substantive defense of entrapment in Michigan is a complete bar to prosecution. See *People v Johnson*, 466 Mich 491, 493-494, 498; 647 NW2d 480 (2002). The doctrine of sentencing entrapment, as defined in the federal courts, merely allows a downward departure from a sentence. Thus, the two concepts have distinct effects—dismissal of the charges on one hand versus a (perhaps slightly) lower sentence on the other.

[11] A sentencing departure may be from either a sentence under a sentencing guidelines range or a statutorily mandated minimum sentence. Although *Babcock* is primarily concerned with the sentencing guidelines, its reasoning is equally applicable to this statutorily mandated minimum sentence case. See *id*. at 257 (acknowledging applicable statutorily mandated minimum sentences and citing *Fields* as a mandatory minimum case).

## IV. APPLICATION TO THIS CASE

The trial court in this case concluded, without more, that the defendant was "escalated." It is not clear whether the court was thinking about defendant's intent or the police conduct. Thus, resentencing or rearticulation of the court's reasons for departure on this factor is required because, under MCL 769.34(3), "it is not enough that there *exists* some potentially substantial and compelling reason to depart from the guidelines range. Rather, this reason must be articulated by the trial court on the record." *Babcock*, *supra* at 258 (emphasis in original). Moreover, a trial court must articulate on the record a substantial and compelling reason why its *particular* departure was warranted. *Id*. at 259-260. The trial court is instructed to do this on remand.

Further, we hold that two of the other reasons for departure that the trial court articulated are not substantial and compelling: (1) defendant's employment for two years, and (2) that at defendant's age of twenty-six years he had only one previous criminal conviction.

With regard to the employment factor, we agree with the Court of Appeals that "defendant's employment as a taxi cab driver . . . for a period of less than two years . . . does not 'keenly' or 'irresistibly' grab one's attention and, therefore, does not warrant a downward departure."

12

Slip op at 2, quoting *Fields*, *supra* at 67.  Thus, we affirm the Court of Appeals on this issue.

Nor does the fact that defendant only had one previous criminal conviction (misdemeanor retail fraud) until he reached the age of twenty-six[12] "'keenly' or 'irresistibly' grab[] our attention."  *Babcock*, *supra* at 257-258, quoting *Fields, supra* at 67.  The trial judge stated that he was "impressed" that defendant had made it to the advanced age of twenty-six with only one previous criminal conviction of a minor nature.  We are not.  We do not believe that the age of twenty-six is particularly old to not yet have a more lengthy criminal record.  Thus, the trial court abused its discretion in this regard.  *Babcock*, *supra* at 269-270.

If a trial court articulates multiple reasons for departure, some of which are substantial and compelling and some of which are not, and the appellate court cannot determine if the sentence departure is sustainable without the offending factors, remand is appropriate.  *Id*. at 260-261.[13]  Accordingly, we remand this case for resentencing or

---

[12] Our analysis holds even if defendant were actually twenty-nine at the time of these offenses.  See n 5.

[13] The Court of Appeals failed to adhere to this directive by failing to consider whether the trial court would have departed and would have departed to the same degree without the employment factor that the Court of Appeals found to be insubstantial and noncompelling.  Thus, even if the Court of Appeals properly deemed "escalation" to be a substantial and compelling factor for departure in this case, the Court should have considered whether the trial court's departure was sustainable without the

13

rearticulation on the record of the trial court's reasons for departure. On remand, defendant may argue any factor left unaddressed by our decision today, and, under the standards of *Babcock*, that his intent in committing the crime was also a proper factor for consideration.

## V. THE CHIEF JUSTICE'S OPINION

The Chief Justice is in agreement with our holding that police conduct alone cannot be considered at sentencing, and she is in agreement with the result of remanding for resentencing in this case. However, the Chief Justice disagrees with part of our rationale and contends that we are employing the subjective factor of intent to determine whether a sentencing departure is warranted in a particular case.

That is, she believes that because intent is subjective, it can never be shown to have been altered in an objective and verifiable way. We disagree. For example, if under surveillance a defendant is importuned to sell more of an illegal substance than he wished and it is clear that he would not have sold it absent the buyer's pleas to do so, the tape of their conversations could well establish in an objective and verifiable fashion the change in the defendant's intent. Similarly, if there is evidence

offending factor of employment, and, if the Court could not do so, it should have remanded the case to the trial court for resentencing or rearticulation of the reasons for departure.

that after a physical assault the assailant helped the victim by securing medical assistance, this could establish objectively and verifiably an immediate repudiation of his previous criminal intent. This is all to say that the trial court cannot depart from the mandatory minimum sentence or guidelines sentence without basing its decision on some actual facts external to the representations of the defendant himself. While objectively and verifiably showing an altered intent will not be easy, nevertheless, we do not believe that the Legislature's statutory sentencing scheme forecloses outright the consideration of a defendant's altered intent at sentencing.

Moreover, we do not consider the intent element of this crime to be "nullified" by allowing a trial judge to consider altered intent as a factor for sentence departure, as the Chief Justice states, *post* at 5. The crime of delivery of a controlled substance of a particular amount is a general intent crime. See *People v Mass*, 464 Mich 615, 627; 628 NW2d 540 (2001). Thus, the only intent required to be convicted of the offense is the intent to deliver a controlled substance. The accused need not have the intent to sell a particular amount of the substance. Rather, that a particular amount was in fact sold is sufficient to convict the accused of delivery of that amount under the statute. See *id*. at 626, citing *People v Quinn*, 440 Mich 178, 189; 487 NW2d 194 (1992).

15

Therefore, our approach does not nullify an element of the offense. The element of intent to sell drugs is left untouched; indeed, defendant himself admitted that he sold drugs. However, defendant's intent concerning the amount of drugs he sold may have been altered in this case when the police repeatedly returned to him to buy ever-increasing amounts, if those amounts were in fact greater than what defendant originally intended to sell.

The Chief Justice asserts that by considering the defendant's intent at the time of sentencing we are evading the Legislature's determination that the specific intent of the individual not be considered for the purpose of conviction. Yet, we are not doing that. We are considering the defendant's intent for the purpose of sentencing. It seems obvious that the sentencing stage is different from the trial stage. Indeed, the latitude for the trial court in sentencing to consider things inadmissible at trial can be found in the Legislature's requirements of what a presentence report can contain. A presentence report prepared pursuant to MCL 771.14 can include hearsay, character evidence, prior convictions, and alleged criminal activity for which the defendant was not charged or convicted. Moreover, the sentencing guidelines themselves, MCL 769.34(3), use this approach by empowering the trial court to consider virtually *any* factor that meets the substantial and compelling standard. Certainly this

16

encyclopedic grant allows the consideration of matters broader than those matters already before the court at trial, because if it did not, the statute would be conveying no greater authority than that previously possessed. Such a construction of the statute, a construction that makes the statute meaningless, should be avoided. See *Sweatt v Dep't of Corrections*, 468 Mich 172, 183; 661 NW2d 201 (2003).[14]

---

[14] The Chief Justice argues that the United States Supreme Court's recent decision in *Blakely v Washington*, 542 US ___; 124 S Ct ___; ___ L Ed 2d ___ (2004), affects this case. We disagree. *Blakely* concerned the Washington state determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Thus, the trial judge in that case was required to set a fixed sentence imposed within a range determined by guidelines and was able to increase the maximum sentence on the basis of judicial fact-finding. This offended the Sixth Amendment, the United States. Supreme Court concluded, because the facts that led to the sentence were not found by the jury. *Blakely*, *supra* at ___.

Michigan, in contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum. The maximum is not determined by the trial judge but is set by law. MCL 769.8. The minimum is based on guidelines ranges as discussed in the present case and in *Babcock*, *supra*. The trial judge sets the minimum but can never exceed the maximum (other than in the case of a habitual offender, which we need not consider because *Blakely* specifically excludes the fact of a previous conviction from its holding). Accordingly, the Michigan system is unaffected by the holding in *Blakely* that was designed to protect the defendant from a higher sentence based on facts not found by the jury in violation of the Sixth Amendment.

Justice O'Connor in her dissent in *Blakely* raised a concern similar to the one the Chief Justice now raises, but the majority in that case made clear that the decision

## VI. CONCLUSION

In light of the applicable sentencing statutes and our recent decision in *Babcock*, we vacate the decision of the Court of Appeals in part and remand this case to the trial court for resentencing or rearticulation of the court's reasons for departure, consistent with this opinion.

Clifford W. Taylor
Stephen J. Markman

---

did not affect indeterminate sentencing systems. The Court stated:

> JUSTICE O'CONNOR argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. *Post*, at 1-10. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. *Indeterminate sentencing does not do so.* It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. [*Blakely, supra* at ___ (emphasis added).]

18

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                              No. 122696

DEON LAMONT CLAYPOOL,

    Defendant-Appellee.

_____

CORRIGAN, C.J. (*concurring in part and dissenting in part*).

Although I agree with the result of the majority's decision, I cannot agree with its analysis. Any sentencing departure that endorses an inherently subjective factor such as the defendant's intent cannot satisfy our Legislature's requirement that any sentencing departures be based on objective and verifiable factors. I continue to believe that sentencing escalation or entrapment is merely the entrapment defense asserted at sentencing rather than before trial and that these related concepts have no valid legal foundation. Further, I agree with the majority that the recent United States Supreme Court decision in *Blakely v Washington*, 542 US ___ ; ___ 124 S Ct ___ ; ___ L Ed 2d ___ (2004), does not invalidate Michigan's indeterminate sentencing scheme as a whole. Nonetheless, the majority's

sweeping language regarding judicial powers to effect departures (not limited to downward departures) will invite challenges to Michigan's scheme; it appears to conflict with principles set out in *Blakely*.

## I.  BACKGROUND

The concepts of "sentencing entrapment" or "escalation" originated in the federal circuit courts of appeals as arguments in support of a departure from the federal sentencing guidelines.  See United States v Lenfesty, 923 F2d 1293, 1300 (CA 8, 1991) ("We are not prepared to say there is no such animal as 'sentencing entrapment.'  Where outrageous official conduct overcomes the will of an individual predisposed only to dealing in small quantities, this contention might bear fruit."); United States v Staufer, 38 F3d 1103, 1108 (CA 9, 1994) ("We are persuaded that 'sentencing entrapment may be legally relied upon to depart under the Sentencing Guidelines,' . . . [citing United States v Barth, 990 F2d 422, 424 (CA 8, 1993)].").  Sentencing entrapment "occurs when 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.'"  Staufer, supra at 1106, citing United States v Stuart, 923 F2d 607, 614 (CA 9, 1991).

2

In Michigan, the concept of sentencing entrapment or escalation was first approved in *People v Shinholster*, 196 Mich App 531; 493 NW2d 502 (1992). In *Shinholster,* the Court of Appeals approved of the consideration of sentencing "escalation" in departing from a mandatory minimum sentence, holding that among those factors authorizing a departure was "that the government's actions—although not rising to the level of entrapment—purposefully escalated the crime." *Id.* at 535.

The theory of "escalation" was again discussed in *People v Ealy,* 222 Mich App 508; 564 NW2d 168 (1997). In *Ealy*, the defendant argued that "the police committed sentencing entrapment by wrongfully inducing him to participate in transactions involving escalating amounts of cocaine and exposing him to greater penalties." *Id*. at 510. The Court in *Ealy* applied the current objective test for entrapment to the "escalation" claim:

> In Michigan, entrapment is analyzed according to a two-pronged test, with entrapment existing if either prong is met. The court must consider whether (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances, or (2) the police engaged in conduct so reprehensible that it cannot be tolerated. [*Id.*]

The Court in *Ealy* also quoted the federal circuit test for sentencing entrapment and held that the facts in the case

did not support application of the theory because the police did nothing more than present defendant with the opportunity to commit the offenses at issue. *Id*. at 510-511. The Court stated that "the delay in [the defendant's] arrest was justified on the ground that an earlier arrest would have impaired the ability of the police to conduct an ongoing undercover narcotics investigation." *Id*. at 511.

The only precedent from this Court involving the concept of sentencing escalation is *People v Fields*, 448 Mich 58, 79; 528 NW2d 176 (1995), in which three justices approved of the adoption in *Shinholster* of the concept of "escalation" as a mitigating factor surrounding an offense.[1]

Thus, the entrapment defense and the concept of sentencing entrapment or escalation are two sides of the same coin. The effect of the entrapment defense is to absolve of responsibility those whose conduct the Legislature has deemed criminal, and the effect of sentencing entrapment or escalation is to partially absolve of responsibility those whose conduct the Legislature has

---

[1] Justice Boyle concurred, but declined to join in the approval of *Shinholster*, stating that it was

> dicta with a vengeance. The question whether defendant's successive criminal acts not involving police entrapment can amount to a mitigating circumstance is far too significant to be resolved in the context of a record that does not present that question. [*Id*. at 82 n 1.]

4

determined warrants a specific minimum penalty.   The similarity of the two concepts can be seen in *Ealy*, in which the Court of Appeals applied the general entrapment test in evaluating the defendant's claim of sentencing escalation.

Indeed, sentencing entrapment or escalation is often used to effectively nullify an element of a crime for which the defendant was convicted by purporting to lessen or eliminate the defendant's intent.   This is no different than the application of the entrapment defense before trial.   Evidence regarding the nature and extent of defendant's intent is only a proper subject for the case-in-chief, when determining whether the elements of a crime have been established.   Reviewing a defendant's subjective intent at sentencing can amount to a nullification of a conviction, or at least an element of a crime, without procedural protections.

In cases in which only a general intent is required, the Legislature has already determined that the specific intent of the individual defendant is irrelevant for the purpose of a conviction.   If the intent is irrelevant at the initial stage for the purpose of the conviction, it cannot be used at sentencing as an end-run around the Legislature's decision.   Here, the Legislature determined

that those who intend to distribute drugs assume the risk of punishment according to the amount distributed.  It is not for this Court to make a different policy decision upon sentencing.

## II.  The Validity of the Entrapment Defense

For the reasons stated in my dissenting statement in *People v Maffett*, 464 Mich 878 (2001), I believe that the judicially crafted entrapment defense—in all its forms—is without constitutional foundation.  Once a "defendant has engaged in conduct constituting all the elements of a criminal offense, as defined by the Legislature," this Court does not then have the authority to conclude that the Legislature did not intend that the defendant be punished or that the prosecution should be barred as a matter of policy.  *Id.* at 895.  To do so runs afoul of settled principles of statutory interpretation as well as principles of separation of powers.  *Id.* at 895-896.

Sentencing entrapment or escalation is no different.  Once a defendant has committed an offense that the Legislature has determined requires a certain minimum punishment, this Court lacks any authority to determine that the Legislature did not really "mean" to apply that punishment to the defendant or that the legislatively mandated punishment should not be applied as a matter of

6

policy. "The regulation of law enforcement practices involved in the investigation and detection of crime falls within the police power of the legislative branch," not within the implied judicial powers or rulemaking authority of this Court under Const 1963, art 6, §§ 1, 5. *Id.* at 897-898. Just as "[t]he assignment of criminal responsibility is undeniably a matter of substantive law" reserved for the Legislature, *id.* at 898, so is the allocation of criminal punishment. For this Court to refuse to apply a legislatively mandated minimum sentence would impermissibly usurp both the legislative and executive functions, in violation of Const 1963, art 3, § 2.

Both the general entrapment defense and the concept of sentencing entrapment or escalation require a court to "disregard the law" and bar prosecution or the imposition of punishment if the court forms the opinion that the crime has been instigated or escalated by government officials. See *id.* at 898. The judicial branch lacks the authority to disregard the law or supervise law enforcement procedure. Therefore, the general entrapment defense and the concept

7

of sentencing entrapment and escalation are without valid legal foundations and should be abrogated.[2]

### III. Sentencing Entrapment or Escalation and Our Legislatively Mandated Sentencing Scheme

As this Court noted in *People v Babcock,* 469 Mich 247, 255-256; 666 NW2d 231 (2003), the promulgation of statutory sentencing guidelines has changed the legal landscape:

> Under the statutory sentencing guidelines, a departure is only allowed by the Legislature if there is a "substantial and compelling reason" for doing so. MCL 769.34(3). Accordingly, since the enactment of the statutory sentencing guidelines, the role of the trial court has necessarily been altered. Before the enactment of these guidelines, the trial court was required to choose a sentence within the statutory minimum and maximum that was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." [*People v Milbourn,* 435 Mich 630, 636; 461 NW2d 1 (1990)]. Following the enactment of these guidelines, the trial court is required to choose a sentence within the guidelines range, unless there is a "substantial and compelling" reason for departing from this range. Consequently . . . the role of the Court of Appeals has also changed from reviewing the trial court's sentencing decision for "proportionality" to reviewing the trial court's

---

[2] The majority mischaracterizes my position as agreeing with the notion that "police conduct alone cannot be considered at sentencing . . . ." Ante at 15. My position, however, is broader than that. As previously explained, I disagree with the concept of sentencing entrapment or escalation altogether regardless whether such "entrapment" or "escalation" resulted from police conduct alone or police conduct and some other factor. It is the very notion of sentencing entrapment and escalation with which I disagree and which is without any valid legal foundation, not the fact that such "entrapment" or "escalation" ultimately stems from police conduct.

8

> sentencing decision to determine, first, whether it is within the appropriate guidelines range and, second, if it is not, whether the trial court has articulated a "substantial and compelling" reason for departing from such range.

For a reason to be "substantial and compelling," it must be "objective and verifiable." *Id.* at 257-258.

Although the majority attempts to conform to the legislative requirements by requiring objective and verifiable proof that police conduct (or any other general cause) influenced the defendant's intent, the fact remains that the departure is, in fact, based on the defendant's intent, which is an inherently *subjective* factor. I cannot fathom how a person's subjective intent can ever be considered objective or verifiable.

"Intent" is defined as "the state of a person's mind that directs his or her actions toward an objective." *Random House Webster's College Dictionary* (1997). The state of a defendant's mind is an inherently subjective factor and cannot suffice as an objective and verifiable factor for a sentencing departure. Subjective intent or motivation cannot satisfy *Babcock*, no matter how "objectively" the defendant presents his version of the state of his mind. Therefore, the concept of sentencing

9

entrapment or escalation is at odds with our legislatively mandated sentencing scheme.[3]

In addition, although I agree with the majority that *Blakely, supra,* does not invalidate our sentencing scheme, I question the majority's sweeping statements in section V of its opinion responding to my dissent. The majority states that the Legislature has provided sentencing courts latitude to consider factors inadmissible at trial. *Ante* at 17. The majority also opines that such latitude is evident from the Legislature's directive regarding what information may be included in a presentence report. The majority continues:

> A presentence report prepared pursuant to MCL 771.14 can include hearsay, character evidence, prior convictions, and alleged criminal activity for which the defendant was not charged or convicted. Moreover, the sentencing guidelines themselves, MCL 769.34(3), use this approach by empowering the trial court to consider virtually *any* factor that meets the substantial and compelling standard. Certainly this encyclopedic grant allows the consideration of matters broader than those matters already before the court at trial, because if it did not,

---

[3] To the extent that the majority is actually talking about a defendant's motive, and not intent, there may be situations in which objective and verifiable evidence of motive will keenly and irresistibly grab the court's attention and justify a sentencing departure. Under the facts of this case, however, I question how defendant's subjective decision to sell drugs of varying amounts from his employer's vehicle on company time can be considered an objective and verifiable factor that keenly or irresistibly grabs the court's interest.

10

> the statute would be conveying no greater authority than that previously possessed. [*Ante* at 17-18.]

Although I agree that *Blakely* does not implicate our sentencing scheme, the full scope of the *Blakely* decision has yet to be determined. Given the response to *Blakely*, it appears likely that the issue of mandatory minimum sentences will need to be settled. See Laurie P. Cohen and Gary Fields, *High-Court Ruling Unleashes Chaos Over Sentencing*, The Wall Street Journal, July 14, 2004. Given the lack of any definitive statement by the United States Supreme Court regarding mandatory minimum sentences, I believe that sweeping statements of broad judicial authority, like those quoted above, may serve only to borrow trouble. The majority's broad assertions of judicial power are not necessary to the disposition of this case and may unnecessarily subject our sentencing scheme to future criticism. In short, although Michigan's sentencing scheme is not currently affected by *Blakely,* I believe the wisest course is to act circumspectly to avoid making our scheme vulnerable when the time inevitably comes to evaluate mandatory minimum sentencing schemes.

## IV. APPLICATION

MCL 333.7401(2)(a)(iii), at the time of this action, provided for a mandatory minimum sentence of ten years for

11

this sort of drug offense.  Former MCL 333.7401(4) provided that the court could depart from the minimum term of imprisonment "if the court finds on the record that there are substantial and compelling reasons to do so."  Again, we noted in *Babcock* that "substantial and compelling" was a legal term of art that required, among other things, that the reason be objective and verifiable.[4]

The finding of sentencing entrapment or escalation here was based solely on the trial court's subjective assessment of the defendant's subjective intent.  This finding cannot be considered objective and verifiable, and

---

[4] MCL 769.34(2)(a) provides, in relevant part:

> If a statute mandates a minimum sentence for an individual sentenced to the jurisdiction of the department of corrections, the court shall impose sentence in accordance with that statute. Imposing a mandatory minimum sentence is not a departure under this section.  If a statute mandates a minimum sentence for an individual sentenced to the jurisdiction of the department of corrections and the statute authorizes the sentencing judge to depart from that minimum sentence, imposing a sentence that exceeds the recommended sentence range but is less than the mandatory minimum sentence is not a departure *under this section*.  [Emphasis added.]

Although the sentence after departure here did exceed the recommended sentencing guidelines range, it is irrelevant that the sentence would not be considered a departure under MCL 769.34 because former MCL 333.7401(4) imposed a separate requirement that the departure be supported by substantial and compelling reasons.

12

so the departure from the mandatory minimum sentence cannot be considered valid under MCL 333.7401(4). Therefore, I agree that resentencing is required.

## V. Conclusion

The judicially created entrapment defense and the concepts of sentencing entrapment and escalation have no valid legal foundation. Reviewing a defendant's subjective intent at sentencing amounts to a nullification of a conviction, or possibly of an element of a crime, without procedural protections. Further, any departure based on sentencing entrapment or escalation is necessarily based on the defendant's subjective intent and, thus, cannot be considered objective and verifiable. Therefore, departures based on the concept of sentencing entrapment or escalation violate the statutory requirements for a sentencing departure.

Maura D. Corrigan

13

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                              No. 122696

DEON LAMONT CLAYPOOL,

    Defendant-Appellee.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I agree with the majority's conclusion that a sentencing judge may consider whatever individualized factors the judge believes are relevant. I also agree with the majority's determination that *Blakely v Washington*, 542 US __; 124 S Ct __; __ L Ed 2d __ (2004), does not appear to affect scoring systems that establish recommended *minimum* sentences, such as we have in Michigan. Moreover, I tend to agree with the lead opinion's ultimate rationale. The lead opinion notes that sentencing entrapment and sentencing manipulation are distinct theories. However, the lead opinion then concludes that the same test is to be employed in cases of sentencing entrapment and in cases of

sentencing manipulation.  I must respectfully disagree with such an approach.

In *United States v Lora*, 129 F Supp 2d 77, 89-90 (D Mass, 2001), the court aptly noted:

> Some courts and scholars, however, distinguish between sentencing factor manipulation and sentencing entrapment. . . . Under this approach, sentencing factor manipulation may exist regardless of the defendant's predisposition. The doctrine focuses exclusively on the motives of law enforcement authorities in manipulating the sentence, as when an agent delays an arrest with the purpose of increasing the defendant's sentence. . . . One commentator illustrated the distinction:
>
> > "An example of 'sentencing entrapment' would be when a government agent offers a kilogram of cocaine to a person who has previously purchased only gram or 'user' amounts, for the purpose of increasing the amount of drugs for which he ultimately will be held accountable. On the other hand, an example of 'sentencing manipulation' would be when an undercover agent continues to engage in undercover drug purchases with a defendant, thereby stretching out an investigation which could have concluded earlier, for the sole purpose of increasing the defendant's sentencing exposure, or when an undercover agent insists that a defendant 'cook' powder cocaine into 'crack,' well-knowing that sentences for dealing in crack are significantly higher than sentences for dealing in powder cocaine."
>
> Amy Levin Weil, "In Partial Defense of Sentencing Entrapment," 7 Fed. Sentencing Rep. 172, 174 (1995) (footnotes omitted).  In any event, the sentencing entrapment and manipulation doctrines both require a finding of improper motive on the part of the government before a departure is warranted.

2

Rather than vacating and remanding, I would simply affirm the decision of the Court of Appeals. The trial court stated on the record that the downward departure was based on substantial and compelling reasons that were objective and verifiable. On appeal, the Court of Appeals affirmed and specifically found that the stated reason for departure at issue here, sentencing manipulation (also referred to as sentencing escalation), was substantial and compelling, as well as objective and verifiable. The panel noted, "Thus, it objectively appears that the police made additional purchases that resulted in escalating the seriousness of the offenses of which defendant was convicted. This fact is verified in the PSIR . . . ." Unpublished opinion per curiam, issued October 18, 2002 (Docket No. 238984), p 3. Because I believe such determinations to have been proper and, thus, the test set forth in *People v Babcock*, 469 Mich 247; 666 NW2d 231 (2003), was met, I would affirm the decision of the Court of Appeals.

Michael F. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                    No. 122696

DEON LAMONT CLAYPOOL,

    Defendant-Appellee.

_____

WEAVER, J. (*dissenting in part and concurring in part*).

I respectfully dissent from the majority's decision to vacate the Court of Appeals decision and remand this case for resentencing. Consistent with my opinions in *People v Daniel*[1] and *People v Babcock*,[2] I would consider all relevant factors, including police conduct, when determining whether there is a substantial and compelling reason to depart from the sentencing guidelines ranges, and I would not limit how the factor of police conduct may be considered.[3]

---

[1] *People v Daniel,* 462 Mich 1, 22-23; 609 NW2d 557 (2000)(Weaver, C.J., dissenting).

[2] *People v Babcock*, 469 Mich 247, 280-284; 666 NW2d 231 (2003)(Weaver, J., dissenting in part and concurring in part).

[3] The majority holds that while police misconduct may not be considered, an "enhanced intent" that results from

Applying the reasoning of my opinion in *Babcock* to the facts of this case, I would conclude that the trial court did not abuse its discretion in departing downward from the sentencing guidelines range because the trial court's sentence in this case was within the principled range of outcomes.[4]  Therefore, I would affirm the Court of Appeals decision affirming defendant's sentence.

But I concur in the majority's conclusion that the United States Supreme Court's decision in *Blakely v Washington*, 542 US ___; 124 S Ct ___; ___L Ed 2d ___ (2004), which considered whether facts that increase the penalty for a crime beyond the prescribed statutory maximum sentence must be submitted to the jury, does not affect Michigan's scoring system, which establishes the recommended *minimum* sentence.

Elizabeth A. Weaver

---

police misconduct may be considered when determining whether to depart from the guidelines ranges. *Ante* at 1, 11-12.  The majority opinion does not explain how sentencing courts are to distinguish practically between police misconduct, which is an impermissible consideration under its analysis, and the "enhanced intent" that results from police misconduct, which is a permissible consideration under its analysis.

[4] *Babcock, supra* at 282-283.

2

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                    No. 122696

DEON LAMONT CLAYPOOL,

    Defendant-Appellee.

_____

YOUNG, J. (*concurring in part and dissenting in part*).

I concur with the majority opinion to the extent that it purports to disallow consideration of the concepts of sentencing entrapment, sentencing manipulation, and sentencing escalation. However, I believe that the core tenet espoused by the majority——that a defendant's so-called "altered intent" may constitute an objective and verifiable factor that may be considered in departing from a statutorily mandated minimum sentence——is directly contrary to the principles this Court so recently reaffirmed in *People v Babcock,* 469 Mich 247; 666 NW2d 231 (2003). Accordingly, although I concur in the majority's

decision to remand for resentencing, I dissent from its analysis.[1]

## I. CONSIDERATION OF POLICE CONDUCT

Although the majority states that police misconduct, standing alone, is not an appropriate factor to consider at sentencing, it nevertheless allows consideration of any police conduct that can be "objectively and verifiably shown" to have "altered a defendant's intent." *Ante* at 1-2. I believe that this is an internally inconsistent holding and that it constitutes an expansion of the substantive defense of entrapment, a judicially created defense that I believe is violative of the doctrine of separation of powers and therefore invalid for the reasons expressed by Chief Justice CORRIGAN in her dissenting statement in *People v Maffett*[2] and her opinion dissenting in part in the instant case. Not only does the majority's holding permit the inappropriate extrapolation of the substantive entrapment defense into the sentencing context, it *broadens* the defense in that (1) it permits (indeed, it

_____

[1] In addition, I concur in footnote 14 of the majority's opinion, *ante* at 18, and agree that Michigan's sentencing system is unaffected by the holding in *Blakely v Washington*, 542 US ___; 124 S Ct ___; ___ L Ed 2d ___ (2004).

[2] 464 Mich 878 (2001).

*requires*) application of a subjective, rather than objective, assessment of the defendant's response to police conduct, and (2) it does not even require *impermissible* or *reprehensible* police conduct, the hallmark of the traditional entrapment defense.[3] Moreover, I agree with Chief Justice CORRIGAN that the rejection of a legislatively mandated sentence requirement based on a court's ad hoc assessment of police conduct impermissibly usurps both legislative and executive authority. See *post* at 6-8.

## II.   INTENT IS NOT AN "OBJECTIVE" FACTOR

Under former MCL 333.7401(4), a departure from the statutorily mandated minimum ten-year sentence applicable to defendant is permitted if the court has a "substantial and compelling reason" for the departure. In *Babcock, supra*, this Court adopted and reaffirmed, as an animating construction of the legislative sentencing guidelines, the *People v Fields*[4] definition of "substantial and compelling reason": a reason that is both objective and verifiable and that "'keenly'" or "'irresistibly'" grabs the court's

---

[3] Michigan's objective entrapment defense requires a showing that either (1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so reprehensible that it cannot be tolerated. *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002).

[4] 448 Mich 58; 528 NW2d 176 (1995).

3

attention.[5]   *Babcock, supra* at 257-258, quoting *Fields*, *supra* at 67.

The majority opines that a defendant's "enhanced intent," if it "can be shown in a manner that satisfies the requirements for a sentencing departure as outlined in *Babcock*," is a factor that may properly be considered in departing from a mandatory minimum sentence.  Although the majority does not dispute that intent is inherently *subjective*, it nevertheless holds that intent, if "*shown*" or "*established*" in "an objective and verifiable way," becomes a proper factor for consideration under *Babcock*. *Ante* at 12, 15-16.   Thus, the majority presents two hypothetical examples in which evidence, other than the defendant's own representations as to his intent, is presented to support the defendant's claim that his intent was altered before or after he committed a crime; under such circumstances, the majority holds, the defendant's intent has been objectively and verifiably shown.[6]   *Id.*

---

[5] In turn, the *Fields* Court adopted the test for "substantial and compelling" as announced by our Court of Appeals in *People v Hill*, 192 Mich App 102; 480 NW2d 913 (1991).  See *Fields, supra* at 62.

[6] The examples proffered by the majority aptly illustrate the inconsistency of its holding.  Consider the first example, in which there is evidence that a defendant sells more of an illegal substance than he was initially prone to sell because the buyer has pleaded for more.  *Ante*

4

The primary flaw in the majority's analysis, in my view, is that it conflates the separate *Babcock* requirements of objectivity and verifiability into a single *evidentiary* requirement. Again, *Babcock* requires that the *factor itself* be both objective and verifiable. The majority, however, takes the view that if there is an objective and verifiable *showing* of the existence of a factor, *Babcock* is satisfied. I disagree.

---

at 15. It is entirely beyond me how such evidence demonstrates that the defendant's intent was "altered" by external factors. Rather, the defendant, at the time he committed the offense, *intended* to sell whatever amount of the illegal substance he, in fact, sold; the buyer's pleas simply provided a *motivation* for the defendant's decision to commit the crime of selling a larger amount. Under the majority's view, the defendant's presentation of a videotape depicting him reluctantly pulling the trigger of a gun and killing a victim in response to an accomplice's urgings would presumably support a downward departure from a mandatory sentence or from the sentencing guidelines range. I cannot subscribe to such an extreme view.

In the second example proffered by the majority there is evidence that the defendant, after assaulting the victim, secures medical assistance. *Ante* at 16. I am at a loss to understand how this evidence of the defendant's *post-crime* behavior demonstrates that his intent in committing the crime was altered. Again, as in the prior example, the defendant intended to do precisely what he did at the time he committed the crime. Rather, this example seems to approve of sentencing consideration of *remorse*, a factor that the *Fields* Court specifically held lacked objectivity. *Fields*, *supra* at 80. Moreover, the fact that a defendant dials 911 after slashing a victim's throat would certainly not "keenly" or "irresistibly" grab this writer's attention.

5

A subjective factor such as intent is not somehow transformed into an objective factor simply because it can be supported by evidence other than the defendant's own representations. Although the existence of such external evidence might well render a particular factor *verifiable*, an otherwise subjective factor will remain subjective, even in the face of a mountain of proof.[7] The adoption of the *Fields/Babcock* test was intended to preclude consideration of such subjective factors. I cannot subscribe to the majority's sub silentio repudiation of the *Babcock* requirement of objectivity.

Accordingly, on remand, I would preclude the trial court from considering as a proper sentencing factor defendant's intent.

Robert P. Young, Jr.
Maura D. Corrigan

---

[7] For example, much like intent, a defendant's *remorse* is a subjective state-of-mind factor that may not be properly considered at sentencing. See *Fields, supra* at 80. Remorse would not be somehow transformed into a proper sentencing factor by virtue of tangible or otherwise external evidence, such as testimony that the defendant cries himself to sleep every night or that he wrote apologetic letters to the victim's family. In such a case, the remorse would be *verifiable*, but it would not be *objective*.

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                                 No. 122696

DEON LAMONT CLAYPOOL,

    Defendant-Appellee.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I agree with Justice Cavanagh's concurrence. However, I do not believe the Court should take a position on the application of *Blakely v Washington*[1] to Michigan's sentencing scheme. The issue was neither raised nor briefed in this case. It is a jurisprudentially significant issue. I would not decide it without full briefing and oral argument.

                        Marilyn Kelly

---

[1] 542 US ___; 124 S Ct ___; ___ L Ed 2d ___ (2004).