# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

ROBERT LEE-LAMAR REYNOLDS,

　　　　　Defendant-Appellant.

UNPUBLISHED
November 24, 2015

No. 322680
Wexford Circuit Court
LC No. 2013-010820-FH

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant, Robert Reynolds, appeals as of right his convictions following a jury trial of two counts of conspiracy to deliver 50 or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*) and MCL 750.157a, conspiracy to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*) and MCL 750.157a, delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), and delivery of 50 or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*). The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to concurrent prison terms of 10 to 40 years for the convictions for conspiracy to deliver 50 or more but less than 450 grams of cocaine and delivery of 50 or more but less than 450 grams of cocaine, and 76 months to 40 years for the convictions for conspiracy to deliver less than 50 grams of cocaine and delivery of less than 50 grams of cocaine. We remand to the trial court with instructions to vacate defendant's conviction for conspiracy to deliver less than 50 grams of cocaine, but we affirm his convictions in all other respects.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In April of 2013, police officers executed a search warrant on the residence of Matthew Gray and Heather Sickles. They discovered evidence of drug distribution, including digital scales, marijuana, and seven one-gram packets of a powdery substance later identified as cocaine. Defendant's fingerprints and DNA were not discovered on any items in the house, but the testimony of several trial witnesses linked him to the drugs. Sickles explained that from approximately February 2013 until April 2013, defendant regularly delivered approximately 10-20 grams of cocaine each week to the residence she shared with Matthew. The cocaine was pre-packaged in one gram amounts and was ready for sale. Sickles and Matthew would sell these

one-gram packages. Sickles explained that defendant delivered cocaine just a day or two before police executed the search warrant on her residence.

Greg Laurent testified that he regularly purchased cocaine from defendant. He began purchasing cocaine—usually one or two grams at a time—from defendant in "the fall of 2011" or the early part of 2012, and did so regularly until defendant was arrested in April 2013. Laurent estimated that he purchased approximately 2-3 grams of cocaine per week from defendant. Laurent testified that he would call defendant to arrange the sale, and then meet defendant at a location of defendant's choosing. During some of the purchases, "Matt" meaning Matthew Gray, was also present. Laurent normally purchased his cocaine directly from defendant; however, defendant instructed Laurent that if he was not around, Laurent was to purchase cocaine from Matthew. Laurent purchased cocaine from Matthew on several occasions.

Edward Gray, Matthew's brother, testified that he met defendant in 2011. Edward recalled that, while he and Matthew were living in their mother's house, defendant would come to the home every two weeks for approximately a year and sell cocaine out of the house with Matthew. He testified that on at least three occasions, defendant brought approximately 4 ounces of cocaine with him—roughly 113 grams—and that defendant and Matthew would package the cocaine for sale in one-gram baggies. Edward occasionally helped weigh the cocaine. Matthew, defendant, and Edward would sell the one-gram baggies around town.

Defendant was charged with five different counts relating to his various cocaine transactions. Counts I (conspiracy to deliver of 50 or more but less than 450 grams of cocaine), II (conspiracy to deliver less than 50 grams of cocaine), and III (delivery of less than 50 grams of cocaine), were for his conduct occurring between February 2013 and April 9, 2013. Counts IV (conspiracy to deliver of 50 or more but less than 450 grams of cocaine) and V (delivery of 50 or more but less than 450 grams of cocaine) pertained to conduct occurring between January 2012 and April 10, 2013. The jury convicted defendant on all five counts, as noted above.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises a host of ineffective assistance of counsel claims—some raised by appellate counsel and some raised by defendant in his Standard 4 brief. We first address those claims raised by appellate counsel. Because no *Ginther*[1] hearing was held, our review is limited to mistakes apparent on the record. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings—if any—are reviewed for clear error and the matters of law are reviewed de novo. *Id.* The ultimate decision whether counsel rendered ineffective assistance is reviewed de novo. *Id.*

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"[I]t is the defendant's burden to prove that counsel did not provide effective assistance." *Heft*, 299 Mich App at 80. "The defendant must overcome the presumption that the challenged action could have been sound trial strategy." *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). "To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Heft,* 299 Mich App at 80-81, citing *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 81.

Defendant first argues that counsel was ineffective because he failed to assert sufficient cause for a change of venue. Prior to trial, counsel moved for a change of venue because a local newspaper ran a story that detailed defendant's prior convictions and his previous drug trial, which resulted in a hung jury. The trial judge denied the motion because the issue could be addressed during voir dire. On appeal, defendant contends that counsel should also have asserted that a venue change was necessary because he faced prejudice as an African-American charged with drug-related offenses in a rural community. However, defendant cannot show that counsel's performance was deficient, much less that he was prejudiced by this alleged deficient performance of counsel. During voir dire, counsel questioned potential jurors about any possible bias that they might have had because of defendant's race and the fact that the crimes alleged involved cocaine. Jurors who expressed bias or reservation about their ability to be impartial were dismissed. In light of counsel's thorough voir dire examination, defendant cannot demonstrate that counsel's failure to mention racial prejudice or drugs in his motion to change venue prejudiced the outcome of the trial. Thus, the record does not show that counsel was ineffective for failing to claim sufficient grounds for a change of venue.

Next, defendant argues that counsel was ineffective for failing to renew his motion to change venue based on pretrial publicity. "It is the general rule that defendants must be tried in the county where the crime is committed." *People v Jendrzejewski*, 455 Mich 495, 499; 566 NW2d 530 (1997). "An exception to the rule provides that the court may, in special circumstances where justice demands or statute provides, change venue to another county." *Id*. at 499-500.

> Federal precedent has used two approaches to determine whether the failure to grant a change of venue is an abuse of discretion. Community prejudice amounting to actual bias has been found where there was extensive highly inflammatory pretrial publicity that saturated the community to such an extent that the entire jury pool was tainted, and, much more infrequently, community bias has been implied from a high percentage of the venire who admit to a disqualifying prejudice. [*Id.* at 500-501(citation omitted).]

The record does not show that the press coverage about defendant's previous trial was highly inflammatory or that it saturated the community to the extent that the entire jury pool was tainted. There were only two articles, published approximately two months apart, that contained factual, not inflammatory, accounts of defendant's trial on an unrelated matter and on the charges at issue in this case. Further, the record does not reveal that community bias could be implied

because a high number of the venire admitted to a disqualifying prejudice; in fact, there is no record evidence of any such bias. Finally, the record does not establish that any of the jurors were exposed to the newspaper story. This might be because, as defendant contends, counsel did not question jurors about whether they read the newspaper story during voir dire. However, defendant gives us no evidence on appeal, and leaves us to speculate that members of the jury were exposed to the very limited media coverage in this case. Although defendant claims that the county involved is a small community and it was likely that all the jurors were exposed to the newspaper articles in this case, we again note that there were only two articles in this case— hardly the inundation of press coverage defendant suggests—and they were simply the type of "nonsensational, factual coverage" that would not require a change of venue. See *People v Unger*, 278 Mich App 210, 255; 749 NW2d 272 (2008). See also *People v Cline*, 276 Mich App 634, 639; 741 NW2d 563 (2007) ("[t]he existence of pretrial publicity, standing alone, does not necessitate a change of venue") (citation and quotation marks omitted). And, even if jurors were aware of the news articles, "[j]uror exposure to information about a defendant's previous convictions or newspaper accounts of the crime for which he has been charged does not in itself establish a presumption that a defendant has been deprived of a fair trial by virtue of pretrial publicity." *Jendrzejewski*, 455 Mich at 502. Thus, defendant neither demonstrated that his trial counsel acted unreasonably in failing to renew his motion to change venue, nor has he demonstrated prejudice. Therefore, defendant has not demonstrated ineffective assistance of counsel on this point.

As to the last issue raised by appellate counsel, defendant cannot prevail on his allegation that his trial counsel was ineffective for informing him that his request for a bench trial— assuming defendant informed his trial counsel of such a request—would be denied in Wexford County as a matter of policy. As an initial matter, there is no record evidence that defendant ever expressed a desire to have a bench trial. In an affidavit attached to a motion to remand, defendant claims that he told his trial counsel he wanted a bench trial, to which counsel allegedly responded "Wexford County does not allow bench trials." Even if we were to consider defendant's affidavit, we would reject his claim. The accused in a criminal case has a right to a jury trial, not a bench trial, and can waive a jury trial only "with the consent of the prosecutor and approval by the court . . . ." MCR 6.401. See also *People v Jones*, 497 Mich 155, 160; 860 NW2d 112 (2014). In addition, the decision whether to waive a jury trial is a matter of trial strategy to which we generally defer. *People v Davenport*, 286 Mich App 191, 198; 779 NW2d 257 (2009). We find no merit in defendant's claim.[2]

---

[2] In addition, because we find no errors as alleged by defendant's appellate counsel, we reject any attendant claim of cumulative error, there being no individual errors to aggregate. See *Unger*, 278 Mich App at 258.

### III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises the following arguments in a Standard 4 brief.  See Michigan Supreme Court Administrative Order 2004-06, Standard 4.

### A.  DOUBLE JEOPARDY

We first address the only meritorious issue in defendant's Standard 4 Brief: double jeopardy.  Defendant argues that his convictions on Counts I (conspiracy to deliver 50 or more but less than 450 grams of cocaine from February 2013 to April 2013), II (conspiracy to deliver less than 50 grams of cocaine from February 2013 to April 2013, and III (delivery of less than 50 grams of cocaine from February 2013 to April 2013), violate the prohibition against double jeopardy.  Both the United States Constitution and the Michigan Constitution prohibit: "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense."  *People v Gibbs*, 299 Mich App 473, 488-489; 830 NW2d 821 (2013).

In this regard, defendant is correct that his convictions on Count I and II (conspiracy to deliver cocaine in various amounts from February 2013 to April 2013) violate double jeopardy because there was only a single conspiracy with Matthew and Sickles, not two distinct conspiracies.  We employ a multi-factor test for determining whether there was a single, continuing conspiracy, or whether there were multiple conspiracies.  *People v Mezy*, 453 Mich 269, 285; 551 NW2d 389 (1996).  Those factors are:

> 1) time, 2) persons acting as coconspirators, 3) the statutory offenses charged in the indictments, 4) the overt acts charged by the government or any other description of the offenses charged that indicate the nature and scope of the activity that the government sought to punish in each case, and 5) places where the events alleged as part of the conspiracy took place.  [*Id.*]

In *Mezy*, our Supreme Court explained that "[t]he essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement each with a separate object."  *Id.*

Applying these factors in the instant case, we note that the timeframe of the two alleged conspiracies completely overlaps, as the court instructed the jury that the pertinent timeframes for both Counts I and II were from February 2013 until April 9, 2013.  As to the second factor, the charged coconspirators for both conspiracies were Matthew and Sickles.  With regard to the third factor, the charged statutory offenses were essentially the same.  Count I involved the greater offense of conspiracy to deliver 50 or more but less than 450 grams of cocaine, while Count II involved the lesser offense of delivery of less than 50 grams of cocaine.  See *People v Wilson*, 454 Mich 421, 431; 563 NW2d 44 (1997).  In addition, the overt acts charged by the prosecution were essentially the same.  That is, the evidence of the conspiracies was defendant's

repeated deliveries of cocaine to Matthew and Sickles.[3]  Finally, concerning the fifth factor, the events alleged as part of the conspiracies took place at the house where Matthew and Sickles resided.  The only variance in the place of delivery occurred because Sickles and Gray moved to different residences over time.

In short, we agree with defendant that the prosecution essentially alleged one continuing conspiracy between defendant, Matthew, and Sickles.  See *Wilson*, 454 Mich at 433-434.  Accordingly, two convictions arising out of this single conspiracy violate the prohibition against double jeopardy.  "The appropriate remedy for multiple punishments in violation of the prohibition against double jeopardy is to vacate the lower charge and affirm the higher conviction."  *People v Franklin*, 298 Mich App 539, 546; 828 NW2d 61 (2012).  See also *People v Bailey*, 486 Mich 1066; 784 NW2d 46 (2010).  As such, we remand with instructions to the trial court to vacate defendant's conviction and sentence for Count II, conspiracy to deliver less than 50 grams of cocaine.

## B. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that the evidence presented was insufficient to support his convictions.  This Court reviews de novo a defendant's challenge to the sufficiency of the evidence.  *People v Cline*, 276 Mich App 634, 642, 741 NW2d 563 (2007).  When reviewing such a challenge, this Court views "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt."  *People v Robinson*, 475 Mich 1, 5, 715 NW2d 44 (2006).  Any conflicting evidence must be resolved in favor of the prosecution.  *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997).  "Questions of credibility are left to the trier of fact and will not be resolved anew by this Court."  *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

Defendant's multitude of challenges to the sufficiency of the evidence produced at trial can be broken down into three main arguments: (1) there was insufficient evidence to establish the elements of each offense; (2) there was insufficient evidence to link him to any of the cocaine, given that neither his fingerprints nor his DNA was found on any of the drugs recovered; and (3) the prosecution's witnesses lacked credibility because, other than law enforcement officers, almost all of the prosecution's witnesses testified pursuant to grants of immunity.  We reject each argument.

Having determined that defendant's conviction in Count II violated double jeopardy, we only consider whether there was sufficient evidence as to Counts I, III, IV, and V.  As to the conspiracy convictions, "[a] criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal

---

[3] For purposes of the conspiracy charges only—not delivery—the jury was permitted to aggregate the amounts of cocaine delivered to Matthew and Sickles.  *People v Collins*, 298 Mich App 458, 466; 828 NW2d 392 (2012).

offense." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). The offense requires that the individuals intend to combine and that they intend to accomplish the criminal act. *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). Here, the prosecution was required to show that defendant and others intended to combine to accomplish the act of delivering the requisite amounts of cocaine. *Id.* at 629-631. As to the two delivery convictions, the prosecution was required to prove: (1) delivery; (2) of the requisite amount; (3) of a controlled substance of—in this case, cocaine or a mixture containing cocaine; and (4) that the defendant knew the substance was cocaine. See *People v Collins*, 298 Mich App 458, 462; 828 NW2d 392 (2012).

There was sufficient evidence to support defendant's convictions. We begin with defendant's convictions for conspiracy to deliver 50 or more but less than 450 grams of cocaine. As to Count I—pertaining to the timeframe of February 2013 to April 2013—there was testimony that defendant brought approximately 10-20 grams of cocaine per week for approximately 6-8 weeks to Matthew and Sickles, and that Matthew and Sickles sold the drugs for defendant during this time period. Given the repeat nature of these transactions, there was ample circumstantial evidence of an agreement between defendant, Matthew, and Sickles for delivery of the drugs. See *Jackson*, 292 Mich App at 588 (a conspiracy may be established through circumstantial evidence). At least with regard to this conspiracy charge, the amount of cocaine delivered during the 6-8 week time period can be aggregated, thereby satisfying the requisite amount of 50 or more but less than 450 grams. *Collins*, 298 Mich App at 465-466.[4] As to Count IV—pertaining to the time period from January 2012 to April 2013—there was testimony that defendant brought up to four grams of cocaine—over 100 grams—to Matthew and Edward at a time, on several occasions. The men packaged the cocaine in one-gram amounts for resale. Their concerted actions amount to circumstantial evidence of the conspiracy. See *Jackson*, 292 Mich App at 588.

There was also sufficient evidence of the two delivery charges, Count III—less than 50 grams of cocaine between February 2013 and April 2013—and Count V—50 or more but less than 450 grams of cocaine between January 2012 and April 2013. As to Count III, Sickles testified that defendant delivered cocaine to her and Matthew during the requisite time period, and police officers recovered approximately seven grams of cocaine at the home shared by Sickles and Matthew. As to Count V, Edward testified that defendant, on approximately three occasions, delivered approximately 100 grams of cocaine to the home owned by Matthew and Edward's mother.

As it concerns the sufficiency of the evidence presented in this case, we reject any claims by defendant that the evidence was insufficient because of a lack of direct physical evidence such as DNA or fingerprint evidence. "Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). Furthermore, there was

---

[4] Aggregation would not, however, be appropriate for a *delivery* charge. *Collins*, 298 Mich App at 463-464.

ample circumstantial evidence to connect defendant to the cocaine and the various cocaine transactions at issue. Several witnesses linked defendant to the possession, delivery, and sale of cocaine.

We also reject defendant's argument that the evidence was rendered insufficient due to a lack of credibility on the part of the prosecution's witnesses. While it is true that Sickles, Laurent, and Edward received immunity in exchange for their testimony, the jury had the opportunity to weigh those factors when determining their credibility. "Questions of credibility are left to the trier of fact and will not be resolved anew by this Court." *Avant*, 235 Mich App at 506. We note that defendant's claim that the witnesses were blackmailed into testifying is unsubstantiated; defendant offers no evidence to support this assertion.[5]

## C. THE GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the jury's verdict was against the great weight of the evidence. Defendant did not preserve this claim by moving for a new trial. See *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). "To avoid forfeiture of an unpreserved, nonconstitutional plain error, the defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). "Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *Id*.

The test to determine whether a verdict is against the great weight of the evidence is whether "the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 647. "It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *Id*. at 637. "New trial motions based solely on the weight of the evidence regarding witness credibility are not favored." *Id*. at 639. A court may not act as a "thirteenth juror" when determining whether a verdict was against the great weight of

---

[5] Defendant also asserts that the prosecutor added counts IV and V at the preliminary examination and attempts to tie this to an insufficient evidence claim. We fail to see how this is an argument challenging the sufficiency of the evidence produced at trial, and defendant does not provide any explanation for this argument. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). To the extent this could be viewed as a claim that there was insufficient evidence to bind him over on Counts IV and V, we address that claim *infra*.

the evidence, and "may not attempt to resolve credibility questions anew." *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998).

For many of the reasons stated above, defendant's great-weight challenge fails. Although defendant again questions the credibility of the witnesses and points out that there was conflicting testimony about whether he in fact supplied the cocaine, "[c]onflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Lemmon*, 456 Mich at 647. Further, defendant's argument that some witnesses were not credible is not a favored ground for a motion for a new trial. *Id*. at 639. After reviewing the record, we note that the testimony of most of the witnesses implicated defendant and supported conviction on the crimes charged. Accordingly, defendant failed to show that the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand, and defendant did not demonstrate plain error affecting his substantial rights.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant raises a multitude of claims of ineffective assistance of counsel. We find each claim to be meritless,[6] and note that the issues are largely lacking in development or citation, and warrant only brief discussion. Also, in reviewing these claims, we note that because no *Ginther* hearing was held, our review is limited to mistakes apparent on the record. See *Heft*, 299 Mich App at 80.

Defendant's first series of issues pertain to counsel's performance at the October 14, 2013 preliminary examination. Defendant claims his trial counsel should have objected to statements made by Sickles that defendant gave Matthew what she "thought to be cocaine" and that defendant knew Matthew "for quite some time from what I gather." Defendant claims that this was hearsay testimony. "Hearsay is a statement, other than the one made by the declarant while testifying at trial or a hearing, offered into evidence to prove the truth of the matter asserted." MRE 801(c). The statements that defendant identified are not inadmissible hearsay because Sickles was testifying about her personal knowledge; she was not testifying about what another person said. Any hearsay objection would have been meritless, and counsel is not ineffective for failing to make a meritless objection. *Collins*, 298 Mich App at 470. We also disagree with defendant's assertion that counsel was ineffective for failing to argue that the evidence was insufficient to support binding defendant over on the charges. He faults counsel for not highlighting the fact that defendant was not present at the time the cocaine was recovered in this case. Contrary to defendant's assertions, counsel *did* highlight this very point in arguing that there was insufficient evidence to bind him over on some of the counts. In addition, our review of the preliminary examination transcript reveals ample circumstantial evidence to support a finding of probable cause that defendant committed the offenses listed in Counts I and

---

[6] Among his many arguments, defendant contends that trial counsel was ineffective for failing to raise the double jeopardy argument noted above. Having concluded that argument was meritorious, we find it unnecessary to address it a second time.

III.[7]  See *People v Henderson*, 282 Mich App 307, 312; 765 NW2d 619 (2009) ("The primary function of the preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it."). Moreover, given that the prosecution presented sufficient evidence of defendant's guilt at trial, any erroneous decision in binding defendant over for trial was harmless.  See *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002).  Counsel was not ineffective in this regard.

We also reject defendant's issues pertaining to counsel's performance in regard to various pre-trial matters.  There is simply no merit to defendant's contention that trial counsel filed a "prosecutorial type motion" with regard to the information.  Rather, counsel filed a motion to strike or amend the information to delete portions of the information regarding dates during which the alleged crimes occurred that were unsupported by testimony adduced at the October 14, 2013 preliminary examination.  Any assertion by defendant that this motion somehow prompted the prosecutor to amend the information does not entitle defendant to relief.  The prosecution was entitled to seek to amend the information, see MCR 6.112(H); thus, even assuming error on the part of trial counsel, such an assertion of error would not entitle defendant to relief.  See *Heft*, 299 Mich App at 80-81 (requiring a defendant to show prejudice in order to prevail on his claim of ineffective assistance of counsel).  Moreover, defendant fails to convince us that the procedure employed in amending the information and conducting a second preliminary examination was improper such that counsel should have or could have raised a successful objection.

Next, defendant argues that counsel was ineffective for failing to object to the addition of two charges against defendant, failing to demand that the prosecution submit physical evidence, and failing to move for severance of the new charges under MCR 6.120(C).  Defendant does not explain what objections counsel should have made, and he failed to cite any authority stating that the prosecution needed physical rather than testimonial or circumstantial evidence to prove the charges.  Instead, "[c]ircumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *Schumacher*, 276 Mich App at 167.  Moreover, defendant does not explain how these alleged failures prejudiced him.  As to whether counsel should have moved to sever the charges, MCR 6.120(C) allows the defendant to move to "sever for separate trials offenses that are not related as defined in subrule (B)(1)."  However, MCR 6.120(B)(1)(b) provides in relevant part that offenses are related if they are based on "a series of connected acts."  Defendant's offenses were related because they stemmed from a series of connected acts, i.e. a continuous series of cocaine deliveries to the same locale using many of the same coconspirators.  Thus, a motion for severance would have been denied, and defendant has not demonstrated ineffective assistance of counsel.

Defendant also appears to argue that counsel should have objected to the sufficiency of the evidence presented at the second preliminary examination that took place on February 11, 2014. Any argument counsel could have raised would have been meritless because our review of the record reveals that there was ample evidence for a probable cause finding on the charges that

---

[7] At this point, defendant was only charged with Counts I-III.  Counts IV and V were added later.  Also, because we conclude that defendant's conviction on Count II violated double jeopardy, we limit our discussion to Counts I and III.

were the subject of that hearing. See *Henderson*, 282 Mich App at 312. While defendant claims that counsel was ineffective for failing to object to the aggregation of the alleged cocaine deliveries to support Count V (delivery of 50 or more but less than 450 grams), defendant ignores the fact that Edward testified at the preliminary examination that defendant delivered "three to four ounces" of cocaine, which was well over 50 grams of the drug. Further, because the prosecution presented sufficient evidence of the charges at trial, any erroneous decision in binding defendant over for trial was harmless. *Libbett*, 251 Mich App at 357. Defendant cannot show that counsel's performance was objectively unreasonable or that it prejudiced him.

Defendant's claims that counsel's failure to present a meaningful defense at trial or that counsel failed to subject the prosecution's case to meaningful adversarial testing are also meritless. Initially, defendant's claim that counsel failed to present a lab report or solicit testimony to demonstrate that his DNA and fingerprints were not found on any items is unsupported by the record. A review of the record shows that counsel specifically elicited testimony indicating that defendant's fingerprints and DNA were not found on any drugs or items seized by the police. In fact, it was uncontested at trial that defendant's fingerprints and DNA were not found on any of the items. Second, defendant does not cite any specific instance to support his assertion that counsel's cross-examination was inept or that counsel "merely asked questions that basically support the prosecutor's contentions." Further, our review of the record does not reveal any support for this assertion. Third, while defendant complains that counsel should have objected to leading questions the prosecutor asked Sickles, he largely fails to cite any examples of such questions or explain the claim in any detail. Moreover, our review of the record reveals nothing that would warrant relief. Fourth, while defendant faults counsel for failing to discover an alleged letter from the prosecutor to Laurent "to make sure there were no improprieties," he fails to cite any facts in support, and the record does not support this assertion. This claim must fail. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (defendant bears the burden of establishing the factual predicate for his claim). Thus, defendant failed to demonstrate that counsel's performance was deficient and that it prejudiced his defense.

Defendant also makes a general allegation that counsel failed to make an independent examination of the facts, laws, pleadings, and circumstances, and that he failed to pursue all relevant leads. However, defendant does not specify how counsel's performance was deficient in this regard. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Thus, defendant did not properly present this specific issue for appellate review.

Next, defendant asserts that counsel was ineffective for failing to move for a directed verdict and/or a new trial based on the great weight of the evidence. "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003). For the reasons discussed previously, the prosecution presented sufficient evidence to convict defendant. Thus, defense counsel was not ineffective for failing to make a motion for a directed verdict. Likewise, for the reasons discussed previously, the verdict was not against the great weight of the evidence. Counsel was not ineffective in failing to make this motion.

Lastly, there is no merit to defendant's assertions that counsel's performance amounted to a complete denial of counsel such that he does not need to show prejudice, or that the cumulative effect of several minor errors warrants reversal.

## IV.  CONCLUSION

We remand with instructions for the trial court to vacate defendant's conviction for conspiracy to deliver less than 50 grams of cocaine, but we affirm in all other respects.  We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Jane M. Beckering