Taylor, J.
Defendant was convicted, on an aider and abettor theory, of (1) delivery of 225 grams or more, but less than 650 grams, of a mixture containing cocaine[1] and with (2) conspiracy to commit that offense.[2]
We granted leave to determine
*618 whether knowledge of the amount of the controlled substance was a necessary element of the delivery and conspiracy charges, and, if so, whether the prosecution’s evidence was insufficient to prove this element and whether the omission of it from the jury instructions deprived defendant of a fair trial.[3]
As explained below, we conclude that the amount of a controlled substance is an element of a delivery offense, but that knowledge of the amount is not an element of a delivery charge. However, consistent with People v Justice (After Remand), 454 Mich 334; 562 NW2d 652 (1997), and Apprendi v New Jersey, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), we also hold that knowledge of the amount of a controlled substance is an element of a conspiracy to deliver charge.
I. EVIDENCE PRESENTED AT TRIAL
An undercover state police officer testified that in early 1996 he purchased crack cocaine six times from Monolito Blackstone. As detailed below, the officer told the jury that defendant assisted Blackstone in completing a seventh sale.
On March 19, 1996, the officer visited Blackstone’s apartment and advised that he wished to purchase ten ounces[4] of cocaine. Blackstone began making phone calls. Jimmy Mass, who lived across the hall, then arrived. Blackstone told Mass he needed “ten ounces” and asked if he knew anyone who they “could get ten ounces from.” Mass said “you should have told me earlier” and began making telephone *619 calls from Blackstone’s bedroom. He then returned and advised Blackstone that “his man was not there.”
On March 25, 1996, the officer again phoned Blackstone and indicated that he still wanted to purchase ten ounces of cocaine. Blackstone told the officer to meet him the next morning at his apartment. At that meeting, Blackstone made a phone call and advised he would have to travel to Detroit to get the cocaine. Before the meeting ended the officer gave Blackstone $3,700, one half of the agreed upon price as a down payment, and they agreed to meet in the afternoon. At 2:00 that afternoon the officer was told by Mass that Blackstone was not coming back, but that he would direct the officer to a meeting place with Blackstone. The officer responded by expressing some hesitation about that arrangement, and indicated he wanted to speak with Blackstone. To facilitate this, Mass took the officer to his own apartment where he telephoned Blackstone and handed the phone to the officer. In that conversation, Blackstone told the officer that the police had followed him to Detroit and that defendant would bring him to a place where the sale could be completed. Mass and the officer then got into the officer’s car, and, under Mass’ direction, they drove to a house in Monroe. As they proceeded, Mass gave the directive to the officer to pull over because he believed a car had been following them. Moreover, when the officer for his part indicated that things did not seem right, Mass reassured him that Blackstone had the officer’s “stuff” and that “that part of it was straight.” Mass also confided to the officer that if Blackstone had taken him with him to Detroit that he would have made sure the police did not follow.
*620 Upon arrival at the house, Mass got out of the car and began looking up and down the street in the manner of a lookout. Meanwhile Blackstone came out from behind the house, got in the car, and handed the officer a package and said “here is your ten ounces.”[5] The officer then paid Blackstone the balance of the purchase price, and drove off alone leaving Mass and Blackstone together in front of the residence.
At the close of the prosecution’s case, defense counsel moved for a directed verdict with regard to the delivery and conspiracy charges. The trial court denied the motion stating that a question of fact existed for the jury. Defendant did not testify or present any evidence. In his closing argument defense counsel argued that Mass was a “sad sack, who should pick better friends” but that he had only been present [when Blackstone had delivered the drugs] and was not part of any conspiracy. Following jury instructions,[6] the jury convicted Mass as charged on both counts.[7]
*621 n. THE COURT OF APPEALS OPINION RESOLVING DEFENDANT’S APPEAL
The Court of Appeals affirmed defendant’s convictions in a divided opinion.[8] The majority rejected defendant’s claim that the evidence was insufficient because the prosecution had presented no evidence that he had knowledge of the quantity of cocaine to be delivered. It concluded that knowledge of the amount of cocaine was not an element of either the delivery charge or the conspiracy charge. The Court also rejected defendant’s assertion that People v Justice, supra, required proof of knowledge of the quantity of controlled substances for a conspiracy conviction. Alternatively, the majority said that, even if Justice required the prosecutor to prove that defendant knew the quantity of cocaine involved to support the conspiracy conviction, the evidence was sufficient to show that Mass knew the quantity of cocaine to be delivered.
The Court also indicated there was no flaw in the jury instructions, even though the instructions did not apprise the jury that the prosecution had to prove that defendant knew the quantity of cocaine involved in the transaction. It concluded that, because knowledge of the quantity of drugs is not an element of the crimes charged, the jury instructions did not constitute error. Alternatively, the majority indicated that if knowledge was an element, any error had been forfeited where there had been no objection to the instructions and the alleged error was not outcome determinative.

 MCL 333.7401(2)(a)(ii).

 MCL 750.157a

 462 Mich 877 (2000).

 Ten ounces is roughly 280 grams.

 Later testing showed the cocaine weighed 246.4 grains.

 Defense counsel’s sole jury instruction objection concerned the giving of a circumstantial evidence instruction.

 The trial court found substantial and compelling reasons to depart from the presumptive twenty- to thirty-year sentences and imposed a tentó twenty-year sentence for each conviction. The prosecutor appealed the sentences and the Court of Appeals reversed and remanded for resentencing. Unpublished opinion per curiam, issued April 14, 1998 (Docket No. 203651). The Court of Appeals held that the trial court had failed to specifically articulate reasons why the factors it identified provided “substantial and compelling” reasons to except the sentences from the presumptive sentences. It also held the trial court had failed to articulate additional justification for the extent of the departure. The Court indicated that it was conceivable that a departure sentence would be appropriate at resentencing. The trial court postponed resentencing defendant until further order of the Court. It appears the trial court is awaiting resolution of defendant’s appeal in this Court before going forward with the resentencing.

 238 Mich App 333; 605 NW2d 322 (1999).