**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0344n.06
Filed: June 18, 2008

No. 06-1982

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

STAFFORD LEE GILL,
     *Petitioner-Appellant*,

     v.

JOHN CASON,
     *Respondent-Appellee*.

_____

On Appeal from the
United States District Court for
the Eastern District of Michigan

Before: KENNEDY and MARTIN, Circuit Judges; HOOD, District Judge.[*]

**KENNEDY, J.** Mr. Stafford Lee Gill appeals the judgment of the district court denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Mr. Gill was convicted in Michigan state court of possession with intent to deliver more than 650 grams of cocaine, in violation of MICH. COMP. LAWS § 333.7401(2)(a)(i) (1998), and conspiracy to possess with intent to deliver more than 650 grams of cocaine, in violation of MICH. COMP. LAWS § 769.12 (1998). Mr. Gill argues that he is entitled to a writ of habeas corpus because there was no evidence from which any rational trier of fact could find that he and his coconspirator conspired to possess with intent to deliver more than 650 grams of cocaine. Because Michigan law requires proof that Mr. Gill's coconspirator was aware of the minimum amount of cocaine charged in the indictment, and because there was no proof from which any rational trier of fact could so find, we find that there was insufficient evidence to support

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

Mr. Gill's conspiracy conviction. We therefore REVERSE the judgment of the district court and GRANT a writ of habeas corpus.

## BACKGROUND

### I. Factual Background

At 3:30 PM on January 29, 1998, officers in the Oakland County Narcotics Enforcement Team executed a search warrant at 321 West Hopkins Avenue in Pontiac, Michigan. The search warrant permitted the officers to seize documents related to Mr. Stafford Lee Gill's drug trafficking. While Mr. Gill resided at 18 Jefferson Street in Pontiac, Michigan, officers had probable cause to believe that Mr. Gill was conducting drug operations at 321 West Hopkins.

When officers executed the search warranted, they immediately found Mr. Gill and a Mr. Andre Wellons engaged in criminal activity in the kitchen. Mr. Gill was seated next to Mr. Wellons at the kitchen table. On the kitchen table in front of both of them was 111.68 grams of crack cocaine in the process of being packaged. Mr. Wellons was cutting and weighing the crack; in front of Mr. Wellons were a razor blade, a plate containing a large, half moon piece of crack cocaine as well as smaller pieces that had broken off the larger disk, and an electronic scale with one-and-a-half grams of crack on it. Mr. Gill was putting the weighed pieces into plastic sandwich baggies; in front of Mr. Gill were baggies containing crack cocaine as well as a box of sandwich baggies. On the table were eighty-four baggies of crack valued at $100 each, as well as nineteen baggies of crack valued at $150 each.

The crack in the kitchen had been recently made. Crack is made by mixing powder cocaine, a base agent, and water, and then heating the mixture. The crack had been made using baking soda, which was found in the cupboard above the microwave, mixing it with powder cocaine and water,

2

and then microwaving the mixture in glass Mason jars, one of which was found on the kitchen table and one of which was found near the microwave. J.A. at 134-35, 138. The disk of crack was "still actually soft and pliable, . . . it was like a warm, fresh-baked cookie." J.A. at 137-38, 141. Given the size and state of the disk of crack, it had likely been made roughly 10-29 minutes prior to the officers' entry. Alt. J.A. at 205-06. The only ingredient or tool necessary to make crack cocaine absent from the kitchen was powder cocaine. Indeed, despite a careful search and despite the fact that powder cocaine leaves a residue, there were no baggies or other receptacles located in the kitchen that had powder cocaine residue. J.A. at 138-40.

Upon further search of the home, the officers located powder cocaine in the closet of the southeast bedroom.[1] The homeowner, Ms. Connie Wellons,[2] shared the southeast bedroom with her boyfriend, Mr. Albert Dowdle, J.A. at 157, and both were present in the bedroom when the search warrant was executed, J.A. at 108. When the officer entered the bedroom, he noticed that the closet door was open, and a "clear, plastic, Tupperware-like, shoe size type box" was visible on a shelf in the closet. The clear box contained six, Ziploc-type baggies filled with a white, powdery substance that upon analysis proved to be 631.10 grams of powder cocaine. A thumbprint from Mr. Gill was found on the top of the box, and three fingerprints from Mr. Dowdle were found on the bottom of the box.[3] J.A. at 156. Also found in the closet, inside a different, opaque plastic box, was an item

---

[1] The southeast bedroom was located down a hallway from the kitchen, J.A. at 107-08, in the back of the house, J.A. at 123.

[2] Ms. Connie Wellons is the mother of Mr. Andre Wellons, who was assisting Mr. Gill weigh and package the crack cocaine in the kitchen. J.A. at 150. Despite being the son of the homeowner, Mr. Wellons did not live at 321 West Hopkins. J.A. at 150.

[3] A fingerprint from Mr. Dowdle was also found on one of the Mason jars in the kitchen. J.A. at 157.

of correspondence bearing Mr. Gill's name and, directly underneath the clear box of powder cocaine, was a contractor's work order for 321 West Hopkins in Mr. Dowdle's name. J.A. at 122-23, 144.

There was further evidence connecting Mr. Gill to 321 West Hopkins Avenue. When searching that residence, the officers located a title to a 1987 Volvo registered in Mr. Gill's name. J.A. at 144. Additionally, during a search of Mr. Gill's residence, 18 Jefferson Street, officers found a Europe Automotive bill addressed to Mr. Gill at 321 West Hopkins Avenue. J.A. at 163-64. Also found during the search of Mr. Gill's house was a bank statement for Ms. Carla Wellons[4] addressed to 18 Jefferson Street, as well as other drug paraphernalia.

Upon his arrest, Mr. Gill made an incriminating statement to the police. He stated that "he was caught red-handed[,] . . . that [the police] caught him with his hand in the cookie jar." J.A. at 171. When asked if the crack on the kitchen table was his, Mr. Gill admitted it was. When asked what he was doing at Ms. Connie Wellons's residence, Mr Gill "stated that he'd brought the cocaine over to 321 West Hopkins, and at that area he was cutting it up, making it ready for sale. . . . He [further] stated [that] all the cocaine was his." J.A. at 171. While there is ambiguity as to whether Mr. Gill meant that he brought crack cocaine or powder cocaine into the house, the evidence viewed most favorably to the prosecution supports a finding that Mr. Gill meant powder cocaine. This inference is derived from the fact that the crack cocaine found in the kitchen was recently made at 321 West Hopkins, and that powder cocaine is required to make crack cocaine.

Based upon all the above evidence, the jury convicted Mr. Gill of both possession with intent to deliver more than 650 grams of cocaine and conspiracy to possess with intent to deliver more than

---

[4] Ms. Carla Wellons was Mr. Gill's girlfriend as well as the daughter of Ms. Connie Wellons, the owner of 321 West Hopkins, and the sister of Mr. Wellons, who was assisting Mr. Gill in weighing and packaging crack cocaine. J.A. at 155.

650 grams of cocaine. Mr. Gill was then sentenced to two, consecutive life terms in prison, which each required a minimum of twenty served years.

## II. Procedural History

On direct appeal to the Michigan Court of Appeals, Mr. Gill challenged, among other things, the sufficiency of the evidence supporting his separate conviction for conspiracy to possess with intent to deliver more than 650 grams of cocaine. His primary argument was that there was an absence of evidence to support a finding that Mr. Wellons was aware of the powder cocaine in the southeast bedroom, as well as an absence of evidence to support a finding that Mr. Wellons was aware of the amount of powder cocaine in the southeast bedroom. Mr. Gill argued that such evidence, evidence of Mr. Wellons's knowledge, was required to support his, Mr. Gill's, conviction for conspiracy to possess with intent to deliver more than 650 grams of cocaine under MICH. COMP. LAWS § 769.12 (1998).

The Michigan Court of Appeals rejected Mr. Gill's challenge. Its pertinent reasoning was as follows:

> [T]he jury could reasonably conclude that the crack cocaine in the
> kitchen which [Mr. Gill] and [Mr.] Wellons were packaging for sale
> was made from the powder cocaine in the bedroom which [Mr. Gill]
> brought into the house. In addition, the evidence showed that the
> house was owned by Connie Wellons, Andre Wellons' mother, and
> also that items of correspondence bearing Andre's name were found
> in the house. Accordingly, the prosecution presented sufficient

5

> evidence that [Mr. Gill] and [Mr.] Wellons conspired to possess and
>
> deliver the cocaine found in the bedroom.

*People v. Gill*, No. 220261, 2001 WL 824447, at *2 (Mich. Ct. App. July 20, 2001) (per curiam) (unpublished).

Further review in the Michigan courts proved unavailing to Mr. Gill. After the Court of Appeals ruled against him, the Michigan Supreme Court denied Mr. Gill leave to appeal that conclusion. On state post-conviction review, the state trial court denied Mr. Gill's motion for relief. Leave to appeal the trial court's conclusion was denied by both the Michigan Court of Appeals and the Michigan Supreme Court.

Mr. Gill then renewed his challenge regarding his conspiracy conviction by filing a petition for a writ of habeas corpus before the United States District Court for the Eastern District of Michigan. The district court, through its adoption of the recommendation and report of the magistrate judge, found that sufficient evidence supported Mr. Gill's conspiracy conviction. Specifically, the court held that the following evidence was sufficient: "(1) the testimony about how crack cocaine is made from powder cocaine; (2) the absence of any powder cocaine in the kitchen with the finished crack cocaine; and (3) [Mr.] Wellons's additional ties to the house where the cocaine was found." J.A. at 53. After denying his petition, the district court did grant Mr. Wellons a certificate of appealability regarding this issue, allowing Mr. Wellons to seek further review in our court.

## ANALYSIS

Mr. Gill argues on appeal that the district court erred in denying his petition for a writ of habeas corpus. Mr. Gill argues that he is entitled to a writ of habeas corpus because insufficient

6

evidence supports his conspiracy conviction, namely because there was no evidence that Mr. Wellons was aware of the existence of the large amount of powder cocaine in the southeast bedroom closet. We conduct *de novo* review of the district court's denial of Mr. Eady's petition, which was based on a determination that the state court did not unreasonably apply settled Supreme Court precedent when it concluded that sufficient evidence supported Mr. Gill's conviction. *See Joseph v. Coyle*, 469 F.3d 441, 453-54 (6th Cir. 2006).

Pursuant to 28 U.S.C. § 2254, our review is constrained by the previous state court determination. We can disagree with a state court's legal determination only when it was "a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2006). "A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

When the state court correctly identifies the legal rule to apply, we can disagree with a state court's application of that rule when it was "a decision that . . . involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established Federal law.'" *Williams*, 529 U.S. at 407-08 (alterations in original). We are mindful "that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphases in original). We are also mindful that an application of Supreme Court precedent can be found

unreasonable even though the applicable precedent provides only a general rule; "[t]he [habeas] statute recognizes . . . that even a general standard may be applied in an unreasonable manner." *Panetti v. Quarterman*, 127 S. Ct. 2842, 2858 (2007). Because the state court's decision was unreasonable, we grant Mr. Gill's petition for a writ of habeas corpus.

*Jackson v. Virginia* established the test for challenges based on insufficient evidence, which is Mr. Gill's challenge to his conviction. It held that a reviewing court's task is

> to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

443 U.S. 307, 318-19 (1979) (emphasis in original) (citation omitted).[5]

We determine whether there was sufficient evidence "in light of applicable [Michigan] law defining the element[s] of [the crime]." *Id.* at 324. Under Michigan state law,

> [t]o be convicted of conspiracy to possess with intent to deliver a
>
> controlled substance, the [state] must prove that (1) the defendant
>
> possessed the specific intent to deliver the statutory minimum as
>
> charged, (2) his coconspirators possessed the specific intent to deliver
>
> the statutory minimum as charged, and (3) the defendant and his

---

[5] "The law therefore commands deference at two levels in this case—first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Despite two levels of deference, we have before found state courts' application of the *Jackson* standard unreasonable. *See, e.g.*, *id.* at 452; *Brown v. Palmer*, 441 F.3d 347, 353 (6th Cir. 2006).

coconspirators possessed the specific intent to combine to deliver the statutory minimum as charged to a third person.

*People v. Justice*, 562 N.W.2d 652, 659 (Mich. 1997); *accord People v. Mass*, 628 N.W.2d 540, 549 (Mich. 2001).[6] To put the point more plain, the proof in this case must establish "not just that [Mr. Wellons] conspired to possess with an intent to deliver some amount of cocaine, but rather, [that Mr. Wellons] had conspired to possess with an intent to deliver the *statutory minimum* of 650 grams," as charged in this case. *See Mass*, 628 N.W.2d at 549 (emphasis in original).[7] Indeed, if the government only proves that the conspiracy involved some unspecified amount of cocaine, then the conspirators can only "be guilty of conspiracy to deliver less than fifty grams of cocaine." *Id.* at 550.

After correctly identifying the governing legal standard, the Michigan Court of Appeals held that sufficient evidence established Mr. Wellons's knowledge of the existence and amount of the powder cocaine in the southeast bedroom closet. The proof it found to support Mr. Wellons's knowledge was: the fact that (1) Mr. Wellons was helping Mr. Gill package the crack cocaine in the kitchen; (2) Mr. Gill admitted to bringing powder cocaine into the house; (3) Mr. Wellons's mother, Ms. Connie Wellons, owned the house; and (4) "correspondence bearing Andre [Wellons]'s name w[as] found in the house." *Gill*, 2001 WL 824447, at *2.

---

[6] We note that Michigan law is in stark contrast to federal conspiracy drug law. Under federal law, the quantity of narcotics is not an element of the offense. *United States v. Jinadu*, 98 F.3d 239, 247 (6th Cir. 1996). Instead, the quantity of narcotics is only a sentencing factor, and the conspirator can be held responsible for the forseeable amount of narcotics involved in the conspiracy. *Id.* at 248-49.

[7] We admit that it may seem a little odd that, despite the fact that Mr. Gill is the petitioner in this case, we are focusing on the proof regarding Mr. Wellons's knowledge. This proof, however, is required by Michigan law to establish Mr. Gill's guilt of conspiracy with intent to deliver 650 grams of cocaine. *See Mass*, 628 N.W.2d at 549. Indeed, the Supreme Court has stated that "[u]nder our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." *Jackson*, 443 U.S. at 323-24 (citation omitted).

We find that the state court's conclusion was reached through an unreasonable application of *Jackson v. Virginia*. *See* 28 U.S.C. § 2254(d)(1). When looking at the last two cited facts, the only possible *reasonable* inference is that Mr. Wellons occasionally spent time at his mother's house. It would be reasonable to infer that, as the son of the homeowner, Mr. Wellons likely visited the home. This inference is confirmed by the fact that there were "a few items of correspondence" with Mr. Wellons's name on them found at the house. J.A. at 142.[8] Further inference, for instance regarding how often Mr. Wellons was at the house or the places in the house Mr. Wellons had spent time, cannot be drawn. There was no testimony to establish the relative importance of the correspondence found at the house, no testimony regarding the address to which the correspondence was sent, and no testimony regarding where in the house the correspondence was found.

Mr. Wellons's occasional visitation at 321 West Hopkins, combined with (1) the assistance he provided Mr. Gill in packaging the crack in the kitchen, (2) the fact that Mr. Gill had brought the powder cocaine into the house; and (3) the fact that the crack in the kitchen had been recently made, still fails to establish any *reasonable* inference that Mr. Wellons was aware of the existence and amount of powder cocaine in a box in the southeast bedroom. There was no evidence that the powder cocaine was ever in the kitchen, which is the only place in the home where the evidence established Mr. Wellons had been.[9] Even if one could infer that the powder cocaine had at some point been in the kitchen, there was no evidence regarding when Mr. Wellons arrived at the house,

---

[8] We acknowledge that other inferences may be drawn, for instance that the correspondence was junk mail and provided no indication regarding how often Mr. Wellons visited the home, but we are to draw all inferences in favor of the prosecution. *Jackson*, 443 U.S. at 318-19.

[9] There was no evidence to even establish that Mr. Wellons had even walked by the door to the southeast bedroom, in whose closet the powder cocaine was located, let alone that Mr. Wellons had been inside of the bedroom.

10

i.e., whether he would have been there when the powder cocaine was present in the kitchen.[10] There was no evidence of any sort of long-term relationship or course of dealing between Mr. Wellons and Mr. Gill.[11] There was no evidence to show that Mr. Gill had extensive trust in Mr. Wellons. There was no evidence that Mr. Wellons had ever been to Mr. Gill's house at 18 Jefferson Street.[12] The absence of a course of dealing or extensive trust is particularly important given the fact that there was almost six times as much powder cocaine found in the southeast bedroom closet as there was crack found in the kitchen. Additionally, there was no evidence that more crack was going to be made, and therefore that Mr. Wellons had to be aware that there was over 600 additional grams of powder cocaine. Lastly, there was no evidence regarding how or when Mr. Wellons had arrived at 321 West

---

[10] Indeed, because the powder cocaine was in individual baggies within the plastic box, the entire box would not have to be taken to the kitchen so as make the crack. This is important because the government had to prove that Mr. Wellons was aware that there was at least roughly 540 grams of powder cocaine; the government had proved that Mr. Wellons was looking at 111.68 grams of crack on the table, but the separate conspiracy charge was for at least 650 grams of cocaine. While the box certainly could have been taken into the kitchen while Mr. Wellons was present, there is simply no evidence to indicate whether it was. *Jackson* requires that inferences be reasonable; we could hypothesize that one way to make the crack could have included taking the box of powder cocaine to the kitchen while Mr. Wellons was present and in his sight, but there is simply no evidence to indicate that such a hypothesis is reasonable. Indeed, in *Jackson* the Supreme Court made clear that sufficient evidence is a closer review than the absence of any evidence. 443 U.S. at 315-16. "[I]t could not seriously be argued that [] a 'modicum' of evidence could by itself rationally support a conviction beyond a reasonable doubt." *Id.* at 320.

[11] At oral argument, the state argued that such a relationship could be reasonably inferred from the evidence because the evidence established that drug dealing was a "family affair." The record, however, fails to bear this out. Instead, such an argument is tantamount to guilt by association; the crime at issue requires knowledge and the fact that the record supports a reasonable inference that one family member had such knowledge does not, in this case, support a reasonable inference that a different family member had such knowledge. Indeed, the Michigan Supreme Court has held that "[g]uilt by association in and of itself is not sufficient to sustain a conviction." *People v. Brynski*, 81 N.W.2d 374, 377 (Mich. 1957); *accord People v. Sobczak*, 73 N.W.2d 921, 923 (Mich. 1955).

[12] Although the police had searched Mr. Gill's house, there was no evidence introduced at the trial to show that Mr. Wellons had any connection whatsoever to the house (i.e., that Mr. Wellons had been there, had stored property there, etc.).

11

Hopkins Avenue.[13] Thus, while there was evidence that would permit the inference that Mr. Wellons was a member of a conspiracy to distribute the crack cocaine in the kitchen, there was no evidence that Mr. Wellons conspired to distribute the grater quantity of powder cocaine in the southeast bedroom closet.

Further undermining any inference that Mr. Wellons was aware of the cocaine in the closet was the evidence that provided affirmative inferences that Mr. Wellons was not Mr. Gill's coconspirator in regards to the powder cocaine. There was evidence that Mr. Dowdle, Ms. Connie Wellons's boyfriend, had previously handled both the clear, plastic box containing the powder cocaine as well as the glass jar used to microwave the powder cocaine to make the crack. Indeed, the box of powder cocaine was found in the closet of the bedroom Mr. Dowdle cohabitated. Furthermore, the powder cocaine was visible to the room's occupants through the open closet door, and Mr. Dowdle was found in the bedroom when the police executed the search warrant. Additionally, directly underneath the box of powder cocaine was a contractor's work order in Mr. Dowdle's name for the house at 321 West Hopkins Avenue. Lastly, Mr. Dowdle was living in the house and was dating the homeowner. Because there was significant evidence regarding Mr. Dowdle's knowledge of and interaction with the powder cocaine, the supposition that Mr. Wellons had to be involved is made more unreasonable.

Viewing the totality of the evidence above, it is clear Mr. Gill's conspiracy conviction is not supported by sufficient evidence. Indeed, there is barely a "modicum" of evidence, if that, proving that Mr. Wellons was aware of the existence or amount of the powder cocaine in the southeast

---

[13] If Mr. Gill had driven Mr. Wellons to the house, for instance, perhaps then it would be reasonable to infer that Mr. Gill had brought the box of powder cocaine with him and that Mr. Wellons had witnessed Mr. Gill load and unload the box. It could also provide some evidence from which to reasonably infer that Mr. Gill had a more established relationship with Mr. Wellons.

12

bedroom closet. While Mr. Gill was properly convicted of possession with intent to deliver the crack cocaine in the kitchen and the powder cocaine in the southeast bedroom closet, Mr. Gill could not be convicted of conspiring to possess with intent to deliver the powder cocaine without proof of Mr. Wellons's knowledge regarding that powder cocaine. We find unreasonable the Michigan Court of Appeals conclusion that there was evidence establishing Mr. Wellons's knowledge of the powder cocaine. We therefore grant Mr. Gill a writ of habeas corpus for his conspiracy conviction.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and Mr. Gill's petition for a writ of habeas corpus is GRANTED.