# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

BRIAN KEITH POSEY,

      Defendant-Appellant.

UNPUBLISHED
December 20, 2018

No. 340087
Missaukee Circuit Court
LC No. 2017-002829-FH

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of conspiracy to deliver between 50-449 grams of heroin, MCL 750.157a and MCL 333.7401(a)(*iii*), and conspiracy to deliver less than 50 grams of cocaine, MCL 750.157a and MCL 333.7401(2)(a)(*iv*), for which the trial court sentenced defendant to serve consecutive terms of imprisonment, respectively, of 10 to 25 years and 5 to 20 years. We affirm.

## I. FACTS

The prosecution presented evidence that Edward DeBoer and his fiancée Ashley DeVries were struggling financially in 2016 when then agreed to meet "B" for the purpose of trafficking in illegal drugs. DeBoer and DeVries both unequivocally identified defendant as "B," and testified that after six trips to Detroit to obtain progressively more crack cocaine and heroin from defendant to sell from their home in Manton, on their final such trip they obtained from defendant just over 50 grams of heroin and just over 10 grams of crack cocaine. After receiving a tip about drug sales at DeBoer and DeVries' home, law enforcement officials raided their residence and found heroin and cocaine along with materials consistent with the distribution of drugs. DeBoer and DeVries then cooperated with law enforcement officials, identifying defendant as their source, and providing text messages from defendant that chronicled their criminal enterprise.

On appeal, defendant argues that the trial court denied him a fair trial by ordering that he be shackled during his trial, that the prosecution failed to provide sufficient evidence that he was involved in a conspiracy to deliver over 50 grams of a controlled substance, and that insofar as the jury was persuaded that defendant was conspirator "B" its verdict was against the great weight of the evidence.

-1-

## II. SHACKLES

"We review a trial court's decision to shackle a defendant for an abuse of discretion under the totality of the circumstances." *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). "Included within the right to a fair trial, absent extraordinary circumstances, is the right to be free of shackles or handcuffs in the courtroom." *Id.* "While this right is not absolute, a defendant 'may be shackled only on a finding supported by record evidence that this is necessary to prevent escape, injury to persons in the courtroom or to maintain order.'" *Id.*, quoting *People v Dunn*, 446 Mich 409, 425; 521 NW2d 255 (1994).

Here, the trial court stated on the record that, after speaking with the undersheriff charged with maintaining custody of defendant during court proceedings, it took his recommendation that defendant be tethered or shackled during trial in light of the latter's history of violence, which history, we note, defendant does not dispute. It was reasonable for the court to rely on the undersheriff's judgment. Given the concern expressed by the undersheriff, the trial court had good reason to guard against any potential violent outburst defendant might offer.

Moreover, the court took a mitigating step to ensure that the jurors would not see defendant's restraints. The record indicates that, from the beginning of proceedings, a skirt was placed over the defense's table to obstruct the jury's view of defendant's tether. Further, the court asked security officers to lengthen defendant's tether after defense counsel complained that defendant could not rise for the jury. There is no indication from the record that the court did not follow through in ensuring that defendant's tether remained concealed at all times, and also that the tether was lengthened sufficiently after it initially prevented defendant from standing for the jury so that defendant was able to stand for the jury thereafter. These mitigating measures underscore reasonableness of the court's having restrained defendant while endeavoring to protect his constitutional rights.

Further, regardless of the propriety of being placed in shackles for trial, defendant has not shown how he suffered unfair prejudice in the matter. See *Payne*, 285 Mich App at 186 ("even if a trial court abuses its discretion and requires a defendant to wear restraints [without adequate justification], the defendant must show that he suffered prejudice as a result of the restraints to be entitled to relief").

Defendant argues that, although the jury could not actually see his tether, the jury could have inferred from the single time defendant was unable to stand for them that he was physically restrained. Defendant also asserts that because no similar skirt was affixed to the prosecution's table, the jury could have inferred he was shackled. But "a defendant is not prejudiced if the jury was unable to see the shackles on the defendant." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). We are satisfied that the record gives no indication that any juror ever actually saw defendant's tether, and we do not regard how the jurors might have speculated in response to defendant's one-time inability to stand for them, or the lack of a skirt on the

prosecution's table, as establishing the existence of prejudicial conditions equal to shackles in plain view.[1]

Defendant additionally suggests that, because two jurors commented that there might be racial bias in the proceedings as the result of the jury's being composed exclusively of white persons and defendant's being African American, they thus revealed a racial animus among the jurors that aggravated the prejudice he suffered from being in restraints. Defendant makes issue of the following exchange between defense counsel and some prospective jurors during jury selection:

> [DEFENSE COUNSEL]: So I'm going to ask a delicate question, and it's probably going to be inartful [sic], so I'll try to say it as well as I can, and it's not a politically correct question. Sir, looking around this room, do you think maybe that [defendant] has reason to be concerned about the jury that's going to be seated?

> [JUROR I]: Yeah.

> [DEFENSE COUNSEL]: Why is that?

> [JUROR I]: Um, well he's got a better tan than the rest of us.

> [DEFENSE COUNSEL]: Yeah.

> [JUROR I]: Um, there's going to be a lot of bias; at least I think there would be.

> [DEFENSE COUNSEL]: Thank you. Does anybody else think that there's a little bit of bias that might be going on against [defendant] because of his race? Yeah? Ma'am, I see you nodding your head a little bit.

> [JUROR II]: I don't know that there's going to be bias; but, you know I think he would have to feel that way being that everyone up here is white, you know.

> [DEFENSE COUNSEL]: Without talking about your experiences or why you feel that way, it's not my intention to embarrass anybody. But is [defendant's] race raise [sic] a problem from anyone seated on this jury? Thank you.

---

[1] This Court has rejected a shackling claim on the grounds that "defense counsel did not request an evidentiary hearing to inquire as to whether members of the jury saw shackles on defendant, and if they did, whether they were thereby prejudiced." *People v Herndon*, 98 Mich App 668, 673; 296 NW2d 333 (1980). Defendant in this case likewise did not move the trial court for an evidentiary hearing regarding his tether, or whether the jury was prejudiced.

The record indicates that no one answered in the affirmative, and jury voir dire moved onto other subjects.

We do not share defendant's concern. The jurors' comments, read in context, reveal not the jurors' own specific concerns, but rather their understanding of the historical problem of securing fair trials of African-American defendants with racially disparate juries. See, e.g., Fukurai, *Race, Social Class, and Jury Participation: New Dimensions for Evaluating Discrimination in Jury Service and Jury Selection*, 24 J Crim Justice 71 (1996). That the jurors who expressed concerns about racism were more likely displaying not any personal racial prejudice in the matter, but rather their lack of it, is underscored by defense counsel's having received no responses upon asking all the jurors if race would be a problem for any of them. Moreover, we note that defense counsel expressed satisfaction with the jury as selected, which itself waived any claim of juror bias. See *People v Johnson*, 245 Mich App 243, 253 n 3; 631 NW2d 1 (2001).

For these reasons, we reject defendant's claim of error based on the trial court's having put him under restraints at trial.

## III. SUFFICIENCY OF THE EVIDENCE

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). The scope of review is the same whether the evidence is direct or circumstantial. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . ." MCL 750.157a. "Conspiracy is a specific intent crime, because it requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). Accordingly, to find defendant guilty of conspiracy to deliver more than 50 grams but less than 450 grams of heroin, the jury had to conclude beyond a reasonable doubt that defendant combined with others to deliver that quantity of that substance, and intended that such delivery actually take place.

In this case, both DeBoer and DeVries recounted at first obtaining a relatively small quantity of heroin from defendant, transporting it to their home, selling it there, then returning to defendant's location in Detroit to pay defendant and obtain more drugs. DeBoer and DeVries also testified that defendant progressively gave them more heroin on each trip to Detroit, which culminated in a final transfer of slightly over 50 grams. DeVries stated that after taking possession of the heroin, the couple sold some of the drugs before the police raided their home. Although the prosecution did not produce any documentation of an agreement between defendant, DeVries, and DeBoer to deliver over 50 grams of heroin to a third party, the circumstantial evidence was sufficient to establish defendant's intent that such trafficking take place. See *People v Wolfe*, 440 Mich 508, 526; 489 NW2d 748 (1992) (explaining that circumstantial

-4-

evidence and reasonable inferences arising from it may prove intent).  From the evidence relating to the final transaction alone, a reasonable jury could well have concluded beyond a reasonable doubt that defendant intended to combine with DeVries and DeBoer to deliver over 50 grams of heroin.

## IV.  GREAT WEIGHT OF THE EVIDENCE

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).  Defendant argues that, especially in light of his alibi theory, the jury's conclusion that defendant was conspirator "B" was contrary to the great weight of the evidence.  Defendant admits, however, that he did not request a new trial on this ground below.  We review an unpreserved claim that a conviction was contrary to the great weight of the evidence for plain error affecting defendant's substantial rights.  See *id.*

Defendant argues that the jury's verdict was against the great weight of the evidence on the grounds that his aunt testified that defendant was shot in the leg at the time relevant, and stayed with her while never leaving the house for the weeks it took him to recuperate.  Defendant thus suggests that he could not have engaged in drug trafficking as alleged by DeVries and DeBoer.  Generally, "if an alibi defense is accepted by the jury, a defendant cannot be convicted." *People v Erb*, 48 Mich App 622, 629; 211 NW2d 51 (1973).  "It is the duty of the prosecution to show beyond a reasonable doubt that the defendant did commit the crime and that, therefore, the defendant was at the scene of the crime at the time it was committed." *Id.* at 629-630.  However, a jury is not bound to believe alibi witnesses where there was contrary testimony, because "[i]t is the jury's province to determine the credibility of all of the witnesses . . . ." *People v Petrosky*, 286 Mich 397, 400; 282 NW 191 (1938).  In this case, the guilty verdict obviously signaled that the jury did not credit defendant's alibi defense.  Further, the jury had a reasonable basis for rejecting the alibi theory.  Defendant's aunt's testimony was dispositive of neither defendant's whereabouts nor his ability to sell drugs throughout his recovery.  Indeed, a friend of defendant testified that she witnessed defendant exercising some mobility while on crutches in that he attended a birthday party during the period in question, which took place away from his aunt's home.

Defendant further suggests that DeVries was not credible in identifying defendant as "B" because she did not tell the police in initial interviews that "B" was on crutches during a drug buy, and that DeBoer's identification of him was not credible because he originally told the police that he made three trips to Detroit but testified at trial that he made seven trips.  Defendant additionally points out that DeBoer did not originally tell the police that defendant was on crutches but then so testified at trial, and also that DeBoer offered numerous phone numbers that he used to contact "B," but the police neither recovered any cellular phones from defendant nor were otherwise able to connect those numbers with him.

We conclude that the contradictions or other weaknesses defendant identifies in the testimony fall far short of rendering DeBoer's and DeVries' identification testimony "so far impeached that it was deprived of all probative value or that the jury could not believe it," or in defiance of "physical realities." *Musser*, 259 Mich App at 219.  We reject defendant's argument

concerning the great weight of the evidence because "conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id.*

Affirmed.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Amy Ronayne Krause