*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ARTHUR LAROME JEMISON,

Defendant-Appellant.

UNPUBLISHED
December 17, 2020

No. 334024
Wayne Circuit Court
LC No. 15-010216-01-FC

## ON REMAND

Before: SAWYER, P.J., and MURRAY, C.J., and BECKERING, J.

PER CURIAM.

Defendant was convicted of first-degree criminal sexual conduct, MCL 750.520b, following a jury trial. Defendant appealed and this Court affirmed. *People v Jemison*, unpublished opinion per curiam, issued 4/12/2018 (Docket No. 334024). Defendant then appealed to the Michigan Supreme Court, which reversed this Court with respect to two issues related to the testimony of an expert witness, Derek Cutler, by video over defendant's objection. *People v Jemison*, ___ Mich ___; ___ NW2d ___ (2020) (Docket No. 157812). The Supreme Court concluded, contrary to this Court's decision, that allowing the witness to testify by video conference violated the Confrontation Clause. *Jemison*, slip op at 13. The Court remanded the matter to us to determine whether the error was harmless beyond a reasonable doubt. *Id.* Additionally, while the Supreme Court agreed with our conclusion that allowing the video testimony over defendant's objection violated MCR 6.006(C), it directed us to revisit our harmless error analysis. Specifically, the Court directed us to consider: "(1) whether the violation of MCR 6.006(C) is susceptible to harmless-error review; (2) if so, what standard applies in determining whether the error was harmless; and (3) whether the error was harmless in this case." *Jemison*, slip op at 12-13 n 9. We once again affirm.

We turn first to the issue whether the Confrontation Clause violation was harmless error. Confrontation Clause errors are subject to harmless-error analysis. *Delaware v Van Arsdall*, 475

US 673, 684; 106 S Ct 1431; 89 L Ed 2d 674 (1986). "A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *People v Mass*, 464 Mich 615, 640 n 29; 628 NW2d 540 (2001) (quotation marks, alteration marks, and citation omitted).

> Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. [*Van Arsdall*, 475 US at 684.]

The prosecutor has the burden to show that a constitutional error is harmless beyond a reasonable doubt. *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999).

In *Coy v Iowa*, 487 US 1012, 1021; 108 S Ct 2798; 101 L Ed 2d 857 (1988), the United States Supreme Court clarified that the denial of face-to-face confrontation is a violation of the Confrontation Clause that is subject to harmless-error analysis.[1] It further stated:

> An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence. [*Id.* at 1021-1022.]

Defendant's confrontation rights were violated when he was denied face-to-face confrontation with Cutler. *Jemison*, ___ Mich at ___; slip op at 11-12. Accordingly, the assessment of harmlessness must be made on the basis of the remaining evidence. *Coy*, 487 US at 1021-1022.

In our view, a key part of the analysis is whether the report prepared by Cutler is part of the remaining evidence. If Cutler's report is not part of the remaining evidence, the Confrontation Clause violation was not harmless beyond a reasonable doubt. The victim never identified defendant as the person who assaulted her. The only evidence that identified defendant as the person who assaulted the victim was the testimony of Catherine Maggert, a forensic scientist in the biology unit of the Michigan State Police crime laboratory. Maggert testified that defendant's DNA matched the major DNA profile of the sperm fraction from the vaginal swabs and the genital gauze. But that testimony relied upon Cutler's report.

---

[1] In *Coy*, the United States Supreme Court held that the defendant was denied his right of confrontation when a screen was placed between him and the complaining witnesses when the witnesses testified.

Plaintiff argues that, regardless whether Cutler testified, Cutler's report was admissible under MCR 6.202 because defendant failed to file a written objection to the notice to use the report as evidence at trial. MCR 6.202 provides:

> **(A)** This rule shall apply to criminal trials in the district and circuit courts.
>
> **(B) Disclosure.** Upon receipt of a forensic laboratory report and certificate, if applicable, by the examining expert, the prosecutor shall serve a copy of the laboratory report and certificate on the opposing party's attorney . . . within 14 days after receipt of the laboratory report and certificate. A proof of service of the report and certificate, if applicable, on the opposing party's attorney . . . shall be filed with the court.
>
> **(C) Notice and Demand.**
>
> (1) *Notice.* If a party intends to offer the report described in subsection (B) as evidence at trial, the party's attorney . . . shall provide the opposing party's attorney . . . with notice of that fact in writing. If the prosecuting attorney intends to offer the report as evidence at trial, notice to the defendant's attorney . . . shall be included with the report. If the defendant intends to offer the report as evidence at trial, notice to the prosecuting attorney shall be provided within 14 days after receipt of the report. *Except as provided in subrule (C)(2), the report and certification, if applicable, are admissible in evidence to the same effect as if the person who performed the analysis or examination had personally testified.*
>
> (2) *Demand.* Upon receipt of a copy of the laboratory report and certificate, if applicable, the opposing party's attorney . . . may file a written objection to the use of the laboratory report and certificate. The written objection shall be filed with the court in which the matter is pending, and shall be served on the attorney, within 14 days of receipt of the notice. If a written objection is filed, the report and certificate are not admissible under subrule (C)(1). *If no objection is made to the use of the laboratory report and certificate within the time allowed by this section, the report and certificate are admissible in evidence as provided in subrule (C)(1).*
>
> (3) For good cause the court shall extend the time period for filing a written objection.
>
> (4) *Adjournment.* Compliance with this court rule shall be good cause for an adjournment of the trial. [Emphasis added.]

MCR 6.202 follows the United States Supreme Court's decision in *Melendez-Diaz v Massachusetts*, 557 US 305; 129 S Ct 2527; 174 L Ed 2d 314 (2009). In *Melendez-Diaz*, the Court held that "three 'certificates of analysis,' " prepared by forensic analysts, which indicated that the seized substance was cocaine were testimonial statements and that, absent a showing that the analysts were unavailable to testify at trial and that the defendant had a prior opportunity to cross-examine them, the defendant was entitled to be confronted with the analysts at trial. *Id.* at 308-311. In a footnote, the United States Supreme Court stated that "[t]he right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may

adopt procedural rules governing the exercise of such objections." *Id.* at 131 n 3. The Court disagreed with the dissent that its holding would have dire consequences on the adversary process and noted that many states "permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report." *Id.* at 326. It stated that these "burden-shifting statutes" were not invalidated by its holding. *Id.* It further stated:

> In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial. Contrary to the dissent's perception, these statutes shift no burden whatever. The defendant *always* has the burden of raising his Confrontation Clause objection; notice-and-demand statutes simply govern the *time* within which he must do so. States are free to adopt procedural rules governing objections. It is common to require a defendant to exercise his rights under the Compulsory Process Clause in advance of trial, announcing his intent to present certain witnesses. There is no conceivable reason why he cannot similarly be compelled to exercise his Confrontation Clause rights before trial. Today's decision will not disrupt criminal prosecutions in the many large States whose practice is already in accord with the Confrontation Clause.[12] [*Id.* 326-327 (internal citations omitted).]

---

[12] As the dissent notes, *some* state statutes, "require[e] defense counsel to subpoena the analyst, to show good cause for demanding the analyst's presence, or even to affirm under oath an intent to cross-examine the analyst." We have no occasion today to pass on the constitutionality of every variety of statute commonly given the notice-and-demand label. It suffices to say that what we have referred to as the "simplest form [of] notice-and-demand statutes," is constitutional . . . .

---

MCR 6.202(C) is a simple notice-and-demand rule. It requires the prosecutor to provide notice to the defendant of her intent to use a forensic laboratory report as evidence at trial, after which the defendant is given 14 days to file a written objection to the use of the report. MCR 6.202(C)(1) and (2). The court rule is constitutional, *Melendez-Diaz*, 557 US at 326-327, 327 n 12, and a defendant who fails to file a written objection to the prosecutor's notice of intent waives his right of confrontation, *id.* at 313 n 2, 326.

Defendant does not dispute that he did not file a written objection to the prosecutor's MCR 6.202 notice of intent to use Cutler's report as evidence at trial. However, after noting that a court may extend the time period for filing a written objection and that trial may be adjourned for compliance with the court rule, defendant argues that because the prosecutor stated at the May 20, 2016 hearing that Cutler "*would* in fact be testifying, albeit by video," there was no longer any reason for him to file a written objection and request an adjournment. However, at the May 20, 2016 hearing, the prosecutor never stated that Cutler would in fact be testifying. She only stated that she would have Cutler available by video if his testimony became necessary. And she made this statement after securing a ruling from the trial court that Cutler's report was admissible under

MCR 6.202. Furthermore, statements made during the course of trial indicate that the prosecutor decided during trial to call Cutler as a witness. At the beginning of jury selection, the trial court informed the prospective jurors of the witnesses whom the prosecutor had indicated she would call. The list did not include Cutler. Neither the prosecutor nor defense counsel informed the trial court or the prospective jurors that the trial court had failed to name a witness. At the beginning of the second day of trial, the prosecutor gave the trial court an amended witness list. It included two new witnesses that the prosecutor had been able to locate and "one witness who's on call if necessary." At the end of the second day of trial, when the trial court asked the prosecutor about the witnesses she intended to call the following day, the prosecutor stated that she would call Maggert and a man who was in a relationship with the victim in 1996. She would also have Cutler "available on call should we need him." Defense counsel never indicated in response to these statements that he was under the impression that the prosecutor would call Cutler as a witness. Accordingly, we reject defendant's argument that there was no reason for him to file a written objection to the prosecutor's MCR 6.202 notice of intent to use Cutler's report as evidence at trial.

Because defendant never filed a written objection to prosecutor's notice of intent to use Cutler's report as evidence at trial, the report was admissible. MCR 6.202(C)(1) and (2). Defendant waived his right to confront Cutler regarding Cutler's report. *Melendez-Diaz*, 557 US at 313 n 2, 326.

For these reasons, we conclude that Cutler's report is part of the remaining evidence. Because defendant did not file a written objection to the prosecutor's MCR 6.202 notice of intent, Cutler's report was admissible to the same extent as if Cutler had testified. MCR 6.202(C)(1) and (2). In accordance with MCR 6.202, Cutler's report was admitted into evidence during Maggert's testimony, and Maggert testified regarding the conclusions in the report. In other words, to the extent that Cutler merely testified to matters that were in his report, that testimony was cumulative.

Having reached this conclusion, we must look at whether Cutler testified to anything other than matters that were in his report. Cutler's testimony generally concerned the conclusions in his report. Only two aspects of Cutler's testimony were not cumulative to his report and Maggert's testimony: (1) Cutler testified that another analyst at Sorenson Forensics did the DNA extractions and (2) Cutler testified that sperm cells would be present in a woman's vagina if a man used a condom but in a lower amount than if the man did not use a condom.

First, Cutler's testimony that another analyst did the DNA extractions was not beneficial to the prosecution. It did not boost the credibility of Cutler's report. If anything, the testimony would cast doubt on the conclusions in Cutler's report because nothing was known about the analyst who did the extractions.

Second, Cutler's testimony that sperm cells would be present in a woman's vagina if a man used a condom was beneficial to the prosecutor's case. The victim had testified that she had had consensual sex with another man, who had worn a condom. This would explain the source of a second DNA profile from a sperm fraction detected at slight levels in the sample. But we do not believe that this would have affected the outcome of the case. The victim did not testify that she had had consensual sex with defendant. Regardless whether she may have had consensual sex with another man, the DNA analysis established that defendant was the source of a DNA specimen detected in the rape kit. From this evidence, a jury could reasonably conclude that defendant had

nonconsensual sex with the victim and the jury could reach that conclusion without Cutler's testimony. Accordingly, we conclude that the violation of defendant's right of confrontation was harmless beyond a reasonable doubt. *Mass*, 464 Mich at 637 n 29.

We next turn to the three questions posed by the Supreme Court with respect to MCR 6.006(C). That rule provides:

> **(C) Defendant in the Courtroom—Other Proceedings.** As long as the defendant is either present in the courtroom or has waived the right to be present, upon a showing of good cause, district and circuit courts may use videoconferencing technology to take testimony from a person at another location in the following proceedings:
>
> (1) evidentiary hearings, competency hearings, sentencings, probation revocation proceedings, and proceedings to revoke a sentence that does not entail an adjudication of guilt, such as youthful trainee status;
>
> (2) with the consent of the parties, trials. A party who does not consent to the use of videoconferencing technology to take testimony from a person at trial shall not be required to articulate any reason for not consenting.

The first question that the Court must address is whether the violation of MCR 6.006(C) is susceptible to harmless-error review. *Jemison*, ___ Mich at ___ n 9; slip op at 12, n 9. The United States Supreme Court has recognized "a limited class of fundamental constitutional errors that defy analysis by harmless error standards." *Neder v United States*, 527 US 1, 7; 119 S Ct 1873; 144 L Ed 2d 35 (1999) (quotation marks and citation omitted). These errors are known as structural errors. *Weaver v Massachusetts*, ___ US ___, ___; 137 S Ct 1899, 1907; 198 L Ed 2d 420 (2017). "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial. Thus, the defining feature of a structural error is that it affects the framework within which the trial proceeds, rather than being simply an error in the trial process itself." *Id.* at ___; 137 S Ct at 1907. There are three broad rationales for categorizing an error as structural. *Id.* at ___; 137 S Ct at 1908. First, an error is deemed structural if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest. An example is the defendant's right to conduct his own defense, which is a right that is based on the fundamental legal principal that a defendant must be allowed to make his own choices regarding the proper way to protect liberty. *Id.* at ___; 137 S Ct at 1908. Second, an error is deemed structural if the effects of the error are simply too hard to measure, such as when a defendant is denied the right to select his own attorney. *Id.* at ___; 137 S Ct at 1908. Third, an error is deemed structural if it always results in fundamental unfairness, such as when an indigent defendant is denied an attorney or the trial court fails to give a reasonable doubt instruction. *Id.* at ___; 137 S Ct at 1908.

A violation of MCR 6.006(C) is not a constitutional error. Admittedly, because the Supreme Court held that the face-to-face requirement of the right of confrontation can only be dispensed with when the witness is unavailable and the defendant had a prior chance to cross-examine the witness, *Jemison*, ___ Mich at ___; slip op at 11-12, the facts giving rise to a violation of MCR 6.006(C) will also often result in a violation of a defendant's right of confrontation. But,

recall that this Court previously treated the violation of MCR 6.006(C) as interchangeable with a Confrontation Clause violation, and the Supreme Court vacated that analysis. *Id.* at ___; slip op at 12 n 9. This leads us to the conclusion that the purpose of MCR 6.006(C) is to provide a framework for the use of videoconferencing technology separate from the Confrontation Clause concerns.

Caselaw indicates that structural errors are constitutional errors. See *Weaver*, ___ US at ___; 137 S Ct at 1907; *Neder*, 527 US at 7; see also *People v Houthoofd*, 487 Mich 568, 587; 790 NW2d 315 (2010) ("A structural error . . . is a fundamental constitutional error that defies a harmless error analysis."); *People v Cornell*, 466 Mich 335, 363 n 17; 646 NW2d 127 (2002) ("Structural error is a concept that has typically been applied to errors of constitutional magnitude[.]"). Because a violation of MCR 6.006(C) is not a constitutional error, it should not be classified as a structural error.

Furthermore, the violation of MCR 6.006(C) is susceptible to harmless-error review. The trial court erred by allowing Cutler to testify over two-way, interactive video technology because defendant did not consent to this manner of testimony. This error did not affect the framework within which defendant's trial occurred. Rather, it concerned the testimony of one witness. The error can quantitatively be assessed in the context of the other evidence presented to determine whether it was harmless. See *People v Anderson (On Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994). But the harmlessness of the error should not turn on whether Cutler's testimony would have been unchanged, or the jury's assessment unaltered, had Cutler testified in person. Such an analysis would involve pure speculation. See *Coy*, 487 US at 1021-1022. Rather, the harmlessness of the error should be determined on the basis of the remaining evidence. See *id*. Hence, we conclude that the violation of MCR 6.006(C) is susceptible to harmless-error review.

This leads to the second question that we must address, namely what standard applies in determining whether the error was harmless. *Jemison*, ___ Mich at ___ n 9; slip op at 12 n 9. MCL 769.26 controls judicial review of preserved, nonconstitutional error. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). The statute provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

The statute "presumes that a preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *Lukity*, 460 Mich at 495-496.

The violation of MCR 6.006(C) is a preserved, nonconstitutional error. Accordingly, MCL 769.26 provides the standard for determining whether the error was harmless.

The third question that the Court must address is whether the violation of MCR 6.006(C) was harmless. *Jemison*, ___ Mich at ___ n 9; slip op at 12 n 9. We conclude that it was for the

same reasons that the violation of defendant's confrontation rights was harmless beyond a reasonable doubt—it does not affirmatively appear more probable than not that the violation of MCR 6.006(C) was outcome-determinative. *Lukity*, 460 Mich at 495-496. Like the analysis regarding whether the Confrontation Clause violation was harmless, the analysis regarding whether the violation of MCR 6.006(C) was harmless requires the Court to determine whether the jury would have reached the same verdict had it not heard Cutler's testimony. If the erroneous admission of Cutler's two-way, interactive video testimony was harmless beyond a reasonable doubt, it is also harmless under the less stringent "more probable than not" standard of MCL 769.26.

In sum, we conclude that the Confrontation Clause violation was harmless beyond a reasonable doubt. Additionally, the violation of MCR 6.006(C) is susceptible to harmless-error review, the standard for that review in this case is the same as for preserved, nonconstitutional error, and the violation was harmless in this case.

Affirmed.

/s/ David H. Sawyer
/s/ Christopher M. Murray
/s/ Jane M. Beckering